Citation Nr: 1528174 
Decision Date: 06/30/15 Archive Date: 07/09/15

DOCKET NO. 14-18 563 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Salt Lake City, Utah


THE ISSUES

1. Entitlement to compensation under 38 U.S.C. § 1151 for heart disease.

2. Whether the January 19, 2012, rating decision that denied entitlement to compensation under 38 U.S.C. § 1151 for heart disease should be reversed or revised on the basis of clear and unmistakable error (CUE). 

3. Entitlement to compensation under 38 U.S.C. § 1151 for stroke.

4. Whether the January 19, 2012, rating decision that denied entitlement to compensation under 38 U.S.C. § 1151 for stroke should be reversed or revised on the basis of CUE.

5. Entitlement to compensation for depression, as secondary to heart disease and/or stroke under 38 U.S.C. § 1151.

6. Whether new and material evidence has been presented to reopen a claim for service connection for depression, to include on a secondary basis.



REPRESENTATION

Appellant represented by: James M. McElfresh, II, Agent


ATTORNEY FOR THE BOARD

D. Schechter, Counsel


INTRODUCTION

The Veteran served on active duty from February 1953 to December 1954.

This appeal comes before the Board of Veterans' Appeals (Board) from rating decisions dated in January 2012 and January 2014 issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Salt Lake City, Utah.

The Board in October 2014 found that the Veteran's claims for compensation for heart disease and stroke under 38 U.S.C. § 1151 were the subject of the Veteran's disagreement with the January 2012 decision denying those claims, even though the RO interpreted the Veteran's notice of disagreement as claims of "CUE" in that decision based on the Veteran's representative's incidental use of that term. Accordingly, as instructed by the Board in its October 2014 remand, the Veteran was afforded the opportunity to perfect an appeal disagreeing with the January 2012 RO decision denying those claims, as a regular appeal and not an appeal asserting CUE. Following RO appellate development and issuance of a statement of the case (SOC), the Veteran then did perfect an appeal of claims of entitlement to compensation for heart disease and stroke under 38 U.S.C. § 1151. Those claims are thus now before the Board on appeal from the January 2012 RO decision. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDINGS OF FACT

1. Heart disease did not result from or permanently increase in severity as the result of an event not reasonably foreseeable or any carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA.

2. Stroke did not result from or permanently increase in severity as the result of an event not reasonably foreseeable or any carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA.

3. The Veteran raised disagreement with how evidence was weighed as the basis for CUE in the January 9, 2012, rating decision that denied compensation under 38 U.S.C. § 1151 for heart disease. 

4. The Veteran raised disagreement with how evidence was weighed as the basis for CUE in the January 9, 2012, rating decision that denied compensation under 38 U.S.C. § 1151 for stroke. 

5. Depression is claimed as caused or aggravated by heart disease or stroke; the Veteran is not service connected for heart disease or stroke, and is not entitled to benefits under 38 U.S.C. § 1151 for said disabilities.

6. The Veteran was last previously denied service connection for depression by a January 2012 RO decision. That decision was not timely appealed. 

7. Evidence added to the record subsequent to the January 2012 rating decision does not relate to an unestablished fact necessary to substantiate the claim or raise a reasonable possibility of substantiating the claim of entitlement to service connection for depression.


CONCLUSIONS OF LAW

1. The criteria for entitlement to compensation under 38 U.S.C. § 1151 for heart disease are not met. 38 U.S.C.A. § 1151 (West 2014); 38 C.F.R. § 3.361 (2014).

2. The criteria for entitlement to compensation under 38 U.S.C. § 1151 for stroke are not met. 38 U.S.C.A. § 1151 (West 2014); 38 C.F.R. § 3.361 (2014).

3. The Veteran has not alleged a valid claim of CUE in the January 9, 2012, rating decision that denied entitlement to compensation under 38 U.S.C. § 1151 for heart disease. 38 U.S.C.A. § 5109A (West 2014); 38 C.F.R. § 3.105(a) (2014).

4. The Veteran has not alleged a valid claim of CUE in the January 9, 2012, rating decision that denied entitlement to compensation under 38 U.S.C. § 1151 for stroke. 38 U.S.C.A. § 5109A (West 2014); 38 C.F.R. § 3.105(a) (2014).

5. The criteria for entitlement to compensation under 38 U.S.C. § 1151 for depression are not met. 38 U.S.C.A. § 1151 (West 2014); 38 C.F.R. § 3.361 (2014).

6. New and material evidence has not been received to reopen the claim of entitlement to service connection for depression including as secondary to a respiratory disability. 38 U.S.C.A. § 5108 (West 2002); 38 C.F.R. § 3.156 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

With respect to the Veteran's claims herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2014).

The Veteran was provided all required notice in a March 2011 letter and, specifically for the depression claim, in a May 2014 SOC. His claim for compensation for depression was subsequently readjudicated in a July Supplemental Statement of the Case (SSOC). The duty to notify and the duty to assist are not applicable to claims based on CUE. See Livesay v. Principi, 15 Vet. App. 165, 178-79 (2001). 

The Board remanded the depression claim in October 2014 in order for the RO to provide the Veteran with notice with respect to the issue of entitlement to compensation for depression as secondary to heart disease and/or stroke under 38 U.S.C. § 1151. While in a January 2015, the RO only provided the Veteran a general development letter, without specifically addressing the claim for depression on any basis, the Board finds that any such failure to provide specific notice of the duties to notify and assist with respect to the depression claim under 38 U.S.C. § 1151 does not prejudice that claim, as the underlying claims for compensation under 38 U.S.C. § 1151 benefits for heart disease and stroke are denied herein. There is thus no possibility of sustaining the secondary 38 U.S.C. § 1151 claim for depression, and hence no necessity to provide additional notice or develop to further the claim. 

Similarly, because the Board in October 2014 denied service connection for a respiratory disability to include chronic obstructive pulmonary disease (COPD), there is no necessity to provide additional notice or develop to further the claim for service connection for depression as secondary to a respiratory disability. If a disability is not service connected, another disability cannot be service connected secondary to that disability, as a matter of law. 38 C.F.R. § 3.310 (2014); see Sabonis v. Brown, 6 Vet. App. 426 (1994).

The duty to assist the Veteran has also been satisfied. The Veteran's service treatment records and identified VA and private treatment records have been obtained. Neither the Veteran nor his representative has identified any outstanding evidence that could be obtained to substantiate the claims. The Board is also unaware of any such evidence.

VA examination in January 2012 was accomplished which address the medical questions of whether heart disease or stroke resulted from or permanently increased in severity as the result of an event not reasonably foreseeable or any carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA in the course of VA care, treatment, or hospitalization. The Board finds that this examination report and its findings and conclusions are adequately supported by that examiner's review of the record and medical understanding, with sufficient rationale, to allow the Board to adjudicate the appealed claims for benefits for heart disease and stroke under 38 U.S.C. § 1151, with the VA report and its findings and conclusion adequate to be weighed against contrary evidence. This weighing is addressed in the analysis, below. The Board is satisfied that no further examination development is required. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007)(required adequacy of examinations for service connection claims); Stefl v. Nicholson, 21 Vet. App. 120, 124-25 (2007) (an adequate examination must support its conclusion with an analysis that can be weighed against contrary opinions); (The Board finds the same rationale generally applicable for claims under 38 U.S.C. § 1151.). 

The claims for secondary service connection and secondary compensation under 38 U.S.C. § 1151 for depression do not warrant an examination because the heart disease and stroke upon which disabilities secondary compensation for depression is claim are herein denied, resulting in no unaddressed medical question that presents the possibility of furthering these secondary claims. See 38 C.F.R. § 3.159(c); McLendon v. Nicholson, 20 Vet. App. 79 (2006). The claim for service connection for depression is not otherwise reopened, and hence an examination is not required on that basis. 38 C.F.R. § 3.159(c); See also Woehlaert v. Nicholson, 21 Vet. App. 456, 463-64 (2007). 

The Board also finds that the development required by the Board's October 2014 remand has also been substantially fulfilled. Only substantial, and not strict, compliance with the terms of a Board remand is required pursuant to Stegall v. West, 11 Vet. App. 268 (1998). D'Aries v. Peake, 22 Vet. App. 97 (2008). Pursuant to the remand, additional required development was accomplished, followed by issuance of a SSOC in December 2014 addressing the claims for compensation under 38 U.S.C. § 1151 for heart disease and stroke. The Veteran was also afforded notice in December 2014 addressing the issue of entitlement to compensation for depression as secondary to heart disease and/or stroke under 38 U.S.C. § 1151, as discussed above. (The Board addresses above how the failure to address this claim with specificity in the issued development notice letter was harmless, since the 38 U.S.C. § 1151 claims for heart disease and stroke are herein denied, precluding any furtherance of the secondary depression claim through additional notice or development.) Then, the Veteran was provided with a Statement of the Case (SOC) in February 2015 addressing the issues of entitlement to compensation for heart disease and stroke under 38 U.S.C. § 1151, and the Veteran subsequently perfect that appeal. 

While this SOC contains a typo which refers to the claim for compensation for stroke as under "38 U.S.C. § 21156" rather than under "38 U.S.C. § 1151," the Board finds this error to be harmless, since the SOC elsewhere appropriately addresses the same basis of claim for compensation for a heart condition as "under 38 U.S.C. § 1151" and it appropriately refers to the claim for benefits for depression as secondary to heart disease and stroke as under "38 U.S.C. § 1151," affording ample opportunity for the reader to contextually understand that a typo had occurred. Other decisions and issued documents similarly appropriately refer to the claim for compensation for stroke as under 38 U.S.C. § 1151. The Board is also satisfied that development requested in the October 2014 remand has been satisfactorily completed. Stegall. 

 Accordingly, the Board will address the merits of the claims.

II. General Legal Criteria - 
Claims Based on Service Connection, and under 38 U.S.C. § 1151 

Service connection may be established for disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303. 

Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Service connection may be granted for disability which is proximately due to or the result of service-connected disability. 38 C.F.R. § 3.310(a). Additional disability resulting from the aggravation of a nonservice-connected disability by a service-connected disability is also compensable under 38 C.F.R. § 3.310(a). Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc).

With respect to claims filed on or after October 1, 1997, inclusive of the issues presently on appeal, 38 U.S.C.A. § 1151 provides in pertinent part that compensation shall be awarded for a qualifying additional disability in the same manner as if such additional disability was service connected. See VAOPGCPREC 40-97 (Dec. 31, 1997). For purposes of this section, a disability is a qualifying additional disability if it was not the result of the veteran's willful misconduct and the disability was caused by hospital care, medical or surgical treatment, or examination furnished the Veteran under any law administered by the Secretary, and the proximate cause of the disability was: (a) carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA in furnishing the hospital care, medical or surgical treatment, or examination; or (b) an event not reasonably foreseeable. 38 U.S.C.A. § 1151 ; 38 C.F.R. § 3.361.

To determine whether additional disability exists, the veteran's condition immediately prior to the beginning of the hospital care, medical or surgical treatment, examination, training and rehabilitation services, or compensated work therapy program upon which the claim is based is compared to his or her condition after such care, treatment, examination, services, or program has been completed. Each body part or system involved is considered separately. 38 C.F.R. § 3.361(b).

To establish causation, the evidence must show that the hospital care, medical or surgical treatment, or examination resulted in the Veteran's additional disability. Merely showing that a Veteran received care, treatment, or examination and that the Veteran has an additional disability does not establish causation. 38 C.F.R. § 3.361(c)(1).

Hospital care, medical or surgical treatment, or examination cannot cause the continuance or natural progress of a disease or injury for which the care, treatment, or examination was furnished unless VA's failure to timely diagnose and properly treat the disease or injury proximately caused the continuance or progress. 38 C.F.R. § 3.361(c)(2). Additional disability caused by a veteran's failure to follow properly given medical instructions is not caused by hospital care, medical or surgical treatment, or examination. 38 C.F.R. § 3.361(c)(3).

The proximate cause of a disability is the action or event that directly caused the disability, as distinguished from a remote contributing cause. 38 C.F.R. § 3.361(d). To establish that carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on VA's part in furnishing hospital care, medical or surgical treatment, or examination proximately caused a Veteran's additional disability, it must be shown that the hospital care, medical or surgical treatment, or examination caused the Veteran's additional disability (see 38 C.F.R. § 3.361(c) ); and that (1) VA failed to exercise the degree of care that would be expected of a reasonable health care provider, or (2) VA furnished the hospital care, medical or surgical treatment, or examination without the veteran's or, in appropriate cases, the veteran's representative's informed consent. 38 C.F.R. § 3.361(d)(1).

Finally, the determination of whether the proximate cause of a veteran's additional disability was an event not reasonably foreseeable is to be based on what a reasonable health care provider would have foreseen. The event does not have to be completely unforeseeable or unimaginable but must be one that a reasonable health care provider would not have considered an ordinary risk of the treatment provided. 38 C.F.R. § 3.361(d)(2). In determining whether an event was reasonably foreseeable, VA will consider whether the risk of that event was the type of risk that a reasonable health care provider would have disclosed in connection with the informed consent procedures of 38 C.F.R. § 17.32. 38 C.F.R. § 3.361(d)(2).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under laws administered by the Secretary. The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). 

To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert, 1 Vet. App. at 54 .

III. Claim for Compensation for Heart Disease, 
Stroke under 38 U.S.C. § 1151 

The Veteran contends, in essence, that he was improperly taken off Plavix in the course of medical care administered by VA, or his VA prescription of Plavix was improperly allowed to lapse by a failure of VA care, without proper notice by VA of the risks of being taken off this medication, and as a result he suffered a stroke and additional harm or disability associated with that stroke. He further asserts that his having been taken off Plavix was against appropriate standards of medical care. 

The medical record reflects that the Veteran was started on Plavix by VA in February 2009 for his heart disease and that he received his last prescribed 30 day supply in August 2010. A possible stroke was detected upon VA treatment in November 2010. 

VA obtained a medical examination in January 2012 to address whether appropriate standards of care were followed with respect to the Veteran's heart disease and subsequent stroke and the administration of medical care including prescribed Plavix. The examiner noted that the Veteran had been prescribed Plavix as a standard medication for one year following a coronary intervention, and that the Plavix was not then prescribed for stroke because there was not then a history of stroke. The examiner reviewed records reflecting limited treatment received at VA, though the Veteran did seek some medication prescriptions and refills from VA. The examiner further noted that the Veteran had no history of stroke and prescription of Plavix was not indicated for stroke prevention for the Veteran when his VA prescription for Plavix was stopped. 

The examiner observed that stopping taking Plavix was not medically known to cause stroke, whereas the Veteran had several risk factors for stroke including hypertension, hyperlipidemia, smoking history, and age. The examiner thereby concluded that the stroke the veteran suffered had nothing to do with his having been taking or not taking or stopping Plavix. The examiner acknowledged that Plavix was sometimes used for stroke prevention, but concluded that it was not indicated for the Veteran prior to his stroke. The examiner also found, including on these bases and a review of the entire record, that there was no VA carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault in VA's furnishing of hospital care, medical or surgical treatment, or examination, that was a proximate cause of his stroke or his heart disease, or that his stroke or heart disease resulted from VA medical care with an event not reasonably foreseeable resulting in stroke or heart disease. In reaching this conclusion, the examiner relayed that it was typical for a "heart patient" to be given a prescription for Paxil for one year, after which the prescription would expire. According to the examiner, the fact that the prescription expired and was not longer sent by VA does not rise to the level of negligence. 

A medical assessment dated November 15, 2010, by a private treating physician, A. B., M.D., addressed the fact that the Veteran had multiple medical conditions including diabetes mellitus, macular degeneration, hypertension, hyperlipidemia, and a recent stroke. The physician noted that the stroke had occurred "some time after having the Plavix discontinued." The physician stated that he had seen the Veteran on November 15, 2010, and that he then "strongly advised him to restart Plavix." The physician explained, "Besides the severe coronary artery disease, now he has had a cerebrovascular accident which increases even more further (sic) risk of cerebrovascular accident and myocardial infarction." 

The medical assessment by A.B., M.D., thus appears to reflect a recommendation to restart Plavix on the basis of a stroke the Veteran experienced that day. The letter does not address whether Plavix should or should not have been restarted prior to the Veteran's reported stroke in November 2010. Hence, ultimately, the letter does not serve to support the Veteran's 38 U.S.C. § 1151 claim because it does not address any causal link between a prior discontinuance of Plavix and any resulting disability or increase in disability associated of either heart disease or stroke. Moreover, Dr. A.B.'s letter does not address whether there was any failure of standards of care on the part of VA or whether any event occurred that was not reasonably foreseeable. 

In support of the claim, the Veteran also submitted a March 2011 medical assessment by private treating physician C. H., M.D., which noted an apparently self-reported history, as follows: 

The patient has been going to the VA for 10 years and seen by Dr. [B] for cardiac problems. He was taking Plavix and was stopped and then had a stroke following that. He is particularly upset thinking that he might have avoided a stroke if he had been allowed to continue his Plavix through the VA. He is now walking with a cane and he fell. He has multiple medical problems including an MI stopped with TPCA 20 years ago. He saw cardiology and started lipids. He had a bankrupt business and personal bankruptcy, five-way bypass, additional two major and many minor strokes and heart attacks. He was on Nitro, Plavix, and Lipitor. Eight years ago, he had diabetes on blood tests. No complications. He stopped medications and was then told he should start them. Now CVAs, chest pain relieved by spray. He had complicated headache and low blood pressure.[....]

The private physician C.H., M.D., then pertinently made the following assessment: "Improperly stopped Plavix." 

While Dr. C.H.'s March 2011 assessment seems favorable to the claim, the Board observes that this private physician did not address the medical facts or questions pertinent to this case. Specifically, the physician's assessment does not discuss the standard medical practice protocol or the medical circumstances that gave rise to the prescription for Plavix or the circumstances that resulted in VA stopping that prescription prior to the Veteran's stroke. Moreover, it does not appear that the physician had the benefit of review of the Veteran's records in providing his assessment, as no mention was made of such a review or of any pertinent evidence reflected in the Veteran's limited VA medical records. Significantly, Dr. C.H. failed to explain a rationale to support his conclusion that stopping of Plavix had been "improper." Further, this private physician did not provide any opinion addressing whether the assessed "improperly stopping Plavix" resulted in any heart disease or stroke or resulted in any increase in those conditions. 

In contrast, the January 2012 VA examiner based his analysis on a review of the Veteran's clinical record. The examiner offered an opinion that was supported by medical knowledge addressing whether there was a causal link between the stopping of the Plavix prescription and the Veteran's stroke, and whether the stopping of that prescription was medically indicated in the Veteran's case, given the medical circumstances surrounding when the medication was first prescribed and allowed to expire. The Board accordingly concludes that the opinions of the VA medical examiner are entitled to substantially greater weight with respect to these claims because they are better informed by the record and supported by sufficient medical rationale, unlike the private medical opinions of record. 

Consideration has also been afforded to the lay statements submitted in support of the claims. The Board appreciates the Veteran's and his spouse's sincere belief that the care he received or did not receive from VA resulted in some harm, including stroke or additional heart disease. However, such questions in this case of appropriateness of the medical care, procedures, and prescribing decisions associated with the Veteran's heart disease and stroke are distinctly medical in nature, far beyond the ambit of lay knowledge. Neither the Veteran nor his spouse has been shown to possess the requisite expertise or knowledge to address these questions. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); see Kahana v. Shinseki, 24 Vet. App. 428, 438 (2011). Hence, their not-medically-competent lay opinions on these issues may not serve to support the claims.

The Board finds the preponderance of competent and credible evidence against heart disease or stroke being caused or aggravated by any carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA, or by any event not reasonably foreseeable resulting from VA care. Rather, the weight of the evidence is consistent with and supportive of the findings and conclusions of the VA examiner in January 2012, including to the effect that the Veteran was prescribed Plavix as part of an after-care protocol following a coronary intervention, and he was not continued on the medication indefinitely as this was not medically indicated for prevention of a stroke. The weight of the evidence is also consistent with and supportive of the VA examiner's conclusion that there was no associated VA carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA, or any event not reasonably foreseeable resulting from VA care, so as to have resulted any heart disease or stroke or any increase in severity of those conditions. 

The Board accordingly finds the weight of the evidence against entitlement to benefits under the provisions of 38 U.S.C. § 1151 for heart disease or stroke. Because the weight of the evidence is against the 38 U.S.C. § 1151 claims for heart disease and stroke, the benefit of the doubt doctrine does not apply. 

IV. Claims of CUE in the January 2012 Decision Denying 
Compensation under 38 U.S.C. § 1151 for Heart Disease, Stroke

An unappealed decision of the RO or the Board becomes final and binding and is not subject to revision on the same factual basis in the absence of clear and unmistakable error (CUE). Where evidence establishes such error, the prior decision will be reversed or amended. 38 U.S.C.A. § 5109A ; 38 C.F.R. §§ 3.104 , 3.105(a).

CUE is a very specific and rare kind of error. It is the kind of error, of fact or of law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the results would have been manifestly different but for the error. See Fugo v. Brown, 6 Vet. App. 40, 43 (1993). 

The Court set forth the following three-pronged for determining when there is CUE present in a prior decision: (1) either the correct facts, as they were known at the time, were not before the adjudicator (i.e., more than a simple disagreement as to how the facts were weighed or evaluated) or the statutory or regulatory provisions extant at the time were incorrectly applied; (2) the error must be undebatable and of the sort which, had it not been made, would have manifestly changed the outcome at the time it was made; and (3) a determination that there was CUE must be based on the record and law that existed at the time of the prior adjudication in question. Russell v. Principi, 3 Vet. App. at 313-14 . See also Bustos v. West, 179 F. 3d 1378, 1380-81 (Fed. Cir. 1999) (to prove CUE, a claimant must show that an error was outcome-determinative, an error that would manifestly have changed the outcome of the prior decision). 

In Fugo, supra, the Court refined and elaborated on the test set forth in Russell, stating: 

CUE is a very specific and rare kind of "error." It is the kind of error, of fact or of law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error... If a claimant-appellant wishes to reasonably raise CUE there must be some degree of specificity as to what the alleged error is and, unless it is the kind of error... that, if true, would be CUE on its face, persuasive reasons must be given as to why the result would have been manifestly different but for the alleged error. It must be remembered that there is a presumption of validity to otherwise final decisions, and that where such decisions are collaterally attacked, and a CUE claim is undoubtedly a collateral attack, the presumption is even stronger. 

Fugo, 6 Vet. App. at 43-44. 

Thus, as a threshold matter, a claimant must plead CUE with sufficient particularity. Only if this threshold requirement is met does the Board have any obligation to address the merits of the CUE claim. See Phillips v. Brown, 10 Vet. App. 25 (1997) (distinguishing denial of CUE due to pleading deficiency and denial of CUE on merits); Luallen v. Brown, 8 Vet. App. 92 (1995) (same). 

In this case, it appears clear that while the Veteran's representative used the term "CUE" in a February 2012 notice of disagreement as to the January 19, 2012, RO decision denying compensation under 38 U.S.C. § 1151 for heart disease and stroke, neither the Veteran nor the representative raised a valid basis for CUE. (It is not clear from the record that a claim of CUE was ever intended, and the Board's October 2014 remand was, in part, to afforded development of the Veteran's disagreement with the January 2012 denial of his claims, without a claim of CUE in that rating decision.) Rather, the Veteran disagreed with the RO's finding, in effect, that the weight of the evidence was against the claims for heart disease or stroke under the provisions of 38 U.S.C. § 1151. The Court has held that allegations that previous adjudications have improperly weighed and evaluated the evidence can never rise to the stringent definition of CUE. Russell v. Principi, 3 Vet. App. 310, 313-14 (1992); Damrel v. Brown, 6 Vet. App. 242, 246 (1994). Thus, claims of CUE in the January 2012 decision denying entitlement to benefits for heart disease and stroke under 38 U.S.C. § 1151 not having been properly raised, and they must be dismissed. 

V. Claims for Benefits for Depression

Depression as secondary to 1151 Benefits Claims

Because the Board here finds no 38 U.S.C. § 1151 entitlement for either heart disease or stroke, there can be no basis for secondary entitlement to 38 U.S.C. § 1151 benefits for depression as caused or aggravated by heart disease or stroke. 

Whether New and Material Evidence is Presented to Reopen a Claim for Service Connection for Depression Including as Secondary to a Respiratory Disorder

Generally, a claim which has been denied in an unappealed RO decision or an unappealed Board decision may not thereafter be reopened and allowed. 38 U.S.C.A. §§ 7104(b), 7105(c). An exception to this rule is 38 U.S.C.A. § 5108, which provides that if new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim. Moreover, new and material evidence received prior to the expiration of the appeal period, or prior to the appellate decision if a timely appeal has been filed, will be considered as having been filed in connection with the claim which was pending at the beginning of the appeal period. 38 C.F.R. § 3.156(b).

New evidence is defined as existing evidence not previously submitted to agency decision makers. Material evidence means evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence previously of record, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a). 

The Court recently interpreted the language of 38 C.F.R. § 3.156(a) as creating a low threshold, and viewed the phrase "raises a reasonable possibility of substantiating the claim" as "enabling rather than precluding reopening." The Court emphasized that the regulation is designed to be consistent with 38 C.F.R. § 3.159(c) (4), which, "does not require new and material evidence as to each previously unproven element of a claim." Shade v. Shinseki, 24 Vet. App. 110 (2010). 

For the purpose of establishing whether new and material evidence has been submitted, the credibility of the evidence, although not its weight, is to be presumed. Justus v. Principi, 3 Vet. App. 510, 513 (1992).

The Veteran's claim for service connection for depression was initially denied in a January 2012 RO decision. The RO denied the claim based on the absence of any evidence of depression in service or of evidence linking current depression to service. The RO noted VA treatment records for depression in 2006 and afterwards, but without medical evidence linking the depression to service. The Veteran did not appeal the January 2012 decision with respect to the depression claim or submit any pertinet evidence during the appeal period. Therefore, the January 2012 rating decision is final with respect to the claim for service connection for depression.

In February 2012, the Veteran filed to reopen the previously denied claim of service connection for depression. 

In the present request to reopen the Veteran appears to focus the claim on a theory of secondary entitlement. He claims that his depression is secondary to a respiratory disability. However, in an October 2014 decision, the Board denied the claim of entitlement to service connection for a respiratory disability. Because the Veteran has not been awarded service connection for a respiratory disability, there is no basis upon which to grant secondary service connection for depression as related to a respiratory condition. See 38 C.F.R. § 3.310. This new theory of entitlement on a secondary basis presents no new and material evidence furthering any element of the claim for service connection, or presenting a reasonable possibility of substantiating the claim, even when considered together with the balance of the evidence of record. Hence, evidence related to secondary service connection does not support reopening the claim for service connection for depression. 

The Veteran has also not presented any new evidence addressing previously unestablished elements of the previously considered theory of entitlement to service connection for depression based on it being directly related to service. There is no new evidence supporting a finding of depression in service or a causal link between service and his current depression. Hence, reopening the claim on a direct basis is also not warranted. Accordingly, the evidence is against the petition to reopen the claim for service connection for depression under any theory of entitlement. 


ORDER

Compensation under 38 U.S.C. § 1151 for heart disease is denied.

As the Veteran has not raised a valid claim of CUE in the January 2012 rating decision denying entitlement to compensation under 38 U.S.C. § 1151 for heart disease, the appeal as to that claim is dismissed.

Compensation under 38 U.S.C. § 1151 for stroke is denied.

As the Veteran has not raised a valid claim of CUE in the January 2012 rating decision denying entitlement to compensation under 38 U.S.C. § 1151 for stroke, the appeal as to that claim is dismissed.

Compensation under 38 U.S.C. § 1151 for depression is denied.

New and material evidence having not been received, reopening of the claim of entitlement to service connection for depression is denied.





____________________________________________
DELYVONNE M. WHITEHEAD
Acting Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs