Joseph F. FUGO, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 93–407.

United States Court of Veterans Appeals.

Nov. 16, 1993.

Joseph F. Fugo, pro se.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Michael A. Leonard, Washington, DC, were on the brief, for appellee.

Before KRAMER, MANKIN and HOLDAWAY, Judges.

HOLDAWAY, Judge:

Appellant, Joseph F. Fugo, is appealing a February 18, 1993, decision of the Board of Veterans' Appeals (BVA or Board). In that decision, appellant received a 100% rating for post-traumatic stress disorder (PTSD) retroactive to March 6, 1990, the date of his claim. Accordingly, the only question before this Court is whether there was clear and unmistakable error (CUE) in not assigning an earlier effective date. *See* 38 C.F.R. § 3.105(a) (1992). Only the facts as to the attempt to raise CUE will be addressed. In the instant appeal, appellant alleged that he was entitled to an increased rating retroactive to 1989 or possibly 1987. The Court finds at the outset that under no possible reading of the facts has appellant reasonably raised an issue of CUE as to the 1987 adjudication. He made no argument nor pointed to any evidence that would call into question any aspect of the 1987 adjudication. The Court, therefore, will only discuss the CUE claim as it relates to the 1989 adjudication. The facts of that adjudication follow.

## I. FACTS

On June 7, 1989, the Board issued a decision finding that appellant did not meet the schedular criteria for a rating in excess of 70% for PTSD. In rendering its decision, the Board had the following evidence before it:

(1) Veterans' Administration (now Department of Veterans Affairs) (VA) outpatient treatment records from April to June 1987 which revealed that appellant was seen for PTSD.

(2) A letter from appellant's former employer dated July 1987, stating that appellant had been hired as a telephone solicitor, but had to be terminated after three days because of inappropriate behavior while conducting business with clients. It was reported that appellant's speech rambled and that he became incoherent at times while talking to prospects on the phone.

(3) Records from an August 1987 VA examination where appellant complained of poor memory, inability to handle stress, and violent outbursts. Appellant stated he had a hard time attending school because of difficulty in concentrating, depression, and anxiety. He reported he was paranoid, insecure, unable to sleep, and had combat nightmares. Diagnosis at that time was PTSD.

(4) Appellant's testimony at a regional office in March 1988. Appellant reported that he stayed at home because he did not feel safe outside of his house. He stated that he had had 50 or 60 jobs since he left the service, and none of them had lasted.

(5) A VA psychologist's letters dated April 1988, August 1988, and March 1989, in which he reported that he had been treating appellant since May 1984 for PTSD, and opined that appellant was unemployable. He stated that appellant had been unsuccessful in attending trade schools and college. The psychologist reported that appellant had had many jobs, which usually lasted only a few days to a few weeks because of psychiatric symptoms including combat nightmares, insomnia, problems with authority, a tendency to isolate himself from others, problems remembering and concentrating, startle reaction, depression, and angry outbursts.

(6) A letter dated May 1988 from an official of the university that appellant attended. The letter advised appellant that he was dismissed from the university because of unsatisfactory academic progress.

(7) Records from a May 1988 VA psychiatric examination. Appellant complained of combat nightmares, restlessness, irritability, depression, poor memory, difficulty concentrating, insomnia, startle reaction, flashbacks, and intrusive thoughts. His hands were shaking and his palms were moist. He was restless and his speech was pressured. Psychological testing showed a decline in intellectual functioning and inability on a cognitive and emotional basis to maintain employment or socially interact in a normal way. The diagnosis at that time was PTSD.

(8) Letters from a VA physician dated May and August 1988 reporting that the physician had been treating appellant for PTSD since 1984. The physician indicated that appellant had been unable to hold a job because of combat nightmares, loss of sleep, problems with authority, tendencies to isolate himself from others, problems remembering and concentrating, problems with loud noises and heightened startle reactions, depression, and angry outbursts. The physician opined that appellant was unemployable.

(9) Personal hearing testimony dated October 1988. Appellant described his symptoms and the difficulty he had in maintaining a job.

(10) VA outpatient treatment records from May 1988 to March 1989, revealing that appellant continued to complain of nightmares, tension, insomnia, memory problems, startle reaction, and difficulty with interpersonal relationships. He reported that he had a painting job for six days in January, but he was terminated because he was late for work and was losing his temper.

(11) An April 1989 statement from appellant's parents reporting that he was very nervous and had a lot of angry outbursts. They reported that appellant had a hard time concentrating and remembering things and that he did not go to family gatherings. They stated that appellant had had many jobs, but that none of them lasted long.

(12) In April 1989, a VA rehabilitation panel noted that appellant had been unable to adjust to academic stress and had held a series of jobs but demonstrated an inability to persevere to completion of any rehabilitation programs. The panel concluded that vocational rehabilitation for the veteran was infeasible.

(13) Personal hearing testimony from appellant and his wife dated May 1989. They described the veteran's symptoms and the problems that he had had maintaining employment and trying to attend school.

Based on this evidence, the Board found that appellant had PTSD manifested by combat nightmares, insomnia, irritability, and depression productive of no more than severe impairment in the ability to obtain or retain employment. See 38 C.F.R. § 4.132, Diagnostic Code 9411 (1992). The Board stated that "it is our opinion that the objective medical evidence [did] not demonstrate that the veteran [had] symptoms so totally incapacitating as to result in an inability to obtain or retain employment." The Board noted that it was cognizant of the opinions expressed by a physician and a psychologist who had been treating the veteran, but on the most recent VA examination, appellant

was oriented and his judgment and insight were intact.

By letter dated June 12, 1989, appellant requested reconsideration of the decision. The record reflects that the motion for reconsideration was granted. An expanded panel of the Board was convened to reconsider his appeal. In letters dated June 28, and October 6 and 28, 1989, and in an informal hearing presentation dated November 21, 1989, appellant argued that the Board's June 1989 decision was in error. On reconsideration, the Board denied appellant's claim for an increased rating and also determined that the June 1989 decision was not the product of "obvious error."

In a June 1992 hearing during adjudication of appellant's reopened claim, appellant's service representative, Mr. Hamer, attempted to raise the issue of CUE. Mr. Hamer stated:

> ... He asked for benefits to be awarded retroactive to 1989. There is a [BVA] decision of June of 1989 and a [BVA] decision in February of 1990, which was a reconsideration. I'm wondering if he is questioning the previous [BVA] decisions. He's also cited 38 C.F.R. [§] 3.102, which has to do with due process and he has cited 38 C.F.R. [§] 3.105(a), which has to do with [CUE]. I wonder if he could give some clarification as to what due process, what duty to assist he alleges was shirked by the VA, and what the [CUE] was.

The Chairman then attempted to extract what appellant was asking for. Appellant indicated that he wanted benefits retroactive to 1987. Later, in his statement in support of claim dated November 9, 1992, appellant wrote that it was CUE by the BVA "when the BVA decided on June 7, [19]89, and February 21, [19]89, to den[y] 100% for total individuality [sic] unemployability, [and] that [the] Board did not use the reasonability [sic] doubt law and they did not use § 4.16[c] law which should of went [sic] in the veteran's favor." (38 C.F.R. § 4.16(c) became effective in March 1989, and it permits a 100% rating when there is a 70% rated mental disability *if* that disability precludes a veteran from obtaining "substantially gainful employment.") Appellant claimed that it was CUE that his rating was not retroactive to September 1989. He wrote that there was CUE by the VA in not helping him establish evidence to support his well-grounded claim. He claimed that there was CUE in that the BVA "must consider all of the evidence of record and all applicable laws and regulations, and its decisions must include the reasons and bases [sic] for its findings and conclusions."

In the BVA decision of February 1993, the Board held that appellant was entitled to an increased rating to 100% for PTSD. The BVA did not address retroactivity or CUE. An April 9, 1993, regional office (RO) rating decision was promulgated to effectuate the BVA decision and an effective date of March 6, 1990, was assigned. So far as this Court is aware, appellant has not challenged the latest RO decision as to the effective date.

## II. ANALYSIS

In his latest claim for an increased disability at the RO level, appellant did not raise the issue of clear and unmistakable error as to prior adjudications. He did *attempt* to raise it before the BVA, as more or less an afterthought in his personal hearing, and in written statements attached to the record after the hearing. The BVA did not address the CUE issue in its decision—this issue, of course, had not been developed by the agency of original jurisdiction (AOJ)—but rather left it to the AOJ to determine the effective date when it implemented the decision of the BVA. We find that appellant did not reasonably raise the CUE issue (and thus the issue of an earlier effective date) in this case.

We start out with the unassailable proposition that merely to aver that there was CUE in a case is not sufficient to raise the issue. Stated another way, while the magic incantation "clear and unmistakable" need not be recited in haec verba, to recite it does not suffice, in and of itself, to reasonably raise the issue. It must always be remembered that CUE is a very specific and rare kind of "error." It is the kind of error, of fact or of law, that when called to the attention of later reviewers *compels* the conclusion, to which reasonable minds could not differ, that the result would have been *manifestly* different but for the error. Thus even

where the premise of error is accepted, if it is not absolutely clear that a different result would have ensued, the error complained of cannot be, ipso facto, clear and unmistakable. *Russell v. Principi*, 3 Vet.App. 310, 313 (1992) (en banc). In the case of *Mata v. Principi*, 3 Vet.App. 558 (1992), for example, this Court determined that CUE had been raised and, therefore, should have been addressed by the BVA. In that case, the law provided that adopted children of veterans are to be accorded dependent status for certain VA benefits. Appellant claimed that a prior adjudication finding an adoption invalid was in error in not according full faith and credit to a Philippine adoption. Appellant advanced facts available to the AOJ in the original adjudication that, *if believed,* would have rendered the adoption undoubtedly valid. The claim of previous error was ignored and the claim denied because there was not new and material evidence. Of course, if Mrs. Mata was correct that a previous adjudication had failed to give full faith and credit to a legal and valid adoption, it would be clear (and unmistakable) to any reasonable person that had it done so the result would have been manifestly favorable to appellant. The BVA should, therefore, have addressed and found the facts necessary to resolve that issue within the context of CUE. On the other hand, simply to claim CUE on the basis that previous adjudications had improperly weighed and evaluated the evidence can never rise to the stringent definition of CUE. *See Russell, supra.* Similarly, neither can broad-brush allegations of "failure to follow the regulations" or "failure to give due process," or any other general, non-specific claim of "error."

■ If a claimant-appellant wishes to reasonably raise CUE there must be some degree of specificity as to what the alleged error is and, unless it is the kind of error, as in *Mata,* that, if true, would be CUE on its face, persuasive reasons must be given as to why the result would have been *manifestly* different but for the alleged error. It must be remembered that there is a presumption of validity to otherwise final decisions, and that where such decisions are collaterally attacked, and a CUE claim is undoubtedly a collateral attack, the presumption is even stronger. *See Martin v. Gray,* 142 U.S. 236, 12 S.Ct. 186, 35 L.Ed. 997 (1891); *Henderson v. Kibbe,* 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977); *Sullivan v. Blackburn,* 804 F.2d 885 (5th Cir.1986); 46 Am.Jur.2d *Judgments* § 641 (1959).

■ Appellant in this case falls far short of alleging the kind of error that could be considered CUE. In essence, he complains that evidence favorable to his case on the issue of unemployability was ignored (although it does appear that all such evidence was *considered*), and he alleges the failure to properly apply regulatory and statutory provisions on the complicated and troublesome issue of "employability." *Hatlestad v. Derwinski,* 1 Vet.App. 164 (1991). In the guise of CUE, he also complains he was not accorded the benefit of the doubt (an issue clearly within the "weighing and evaluation" realm); he also raises "duty to assist" in vague and general terms and failure to give reasons and bases in similarly vague terms. It is difficult to see how either failure in "duty to assist" or failure to give reason or bases could ever be CUE; but if so claimed, the claimant must state why it is CUE and present a compelling case that the result would have been manifestly different.

The only matter raised by appellant that could conceivably be considered CUE is the failure of the June 1989 adjudication to consider 38 C.F.R. § 4.16(c), a regulation that became effective in March 1989. That regulation provides in effect that a 70% rating for a mental condition will trigger a total rating *if* the veteran is precluded from substantially gainful employment. It is one of those regulations that this Court has included in noting the confusing tapestry of regulations that apply a combination of subjective and objective measures in determining the question of unemployability. *See Hatlestad, supra.* It is, at the most, debatable whether consideration of this regulation would have had any effect on the RO adjudication in this case. It certainly is far from "manifest" that there would have been a different result, particularly given the fact that appellant's "employability" was adjudicated and specifically found; 38 C.F.R. § 4.16 does not automati-

cally trigger a total rating, there must be a further finding of unemployability. Moreover, the 1990 BVA decision *did* consider § 4.16 in determining that there was no obvious error in the 1989 adjudication. It is true they did not give "reasons or bases" as to how it was considered, but "reasons or bases" qua "reasons or bases" is outside the ambit of a claim of CUE in any event. In short, although appellant is certainly to be commended for knowing that an earlier effective date requires that he "pigeon hole" his appeal in the CUE box, it is not enough to raise the issue simply to label garden-variety types of error as CUE. He did not reasonably raise CUE in this case and, therefore, there was no requirement that the BVA address the issue. The Board should have noted his attempt to raise this issue and resolved it, as it could have done, simply and quickly. The failure to note the claim was error, but for the reasons noted above, harmless.

### III. CONCLUSION

The decision of the Board is AFFIRMED.