Citation Nr: 1641944 
Decision Date: 10/31/16 Archive Date: 11/08/16

DOCKET NO. 13-25 648 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia


THE ISSUE

Entitlement to Dependency and Indemnity Compensation (DIC) benefits pursuant to 38 U.S.C.A. § 1318 on the basis of clear and unmistakable error (CUE) in a May 1979 rating decision that denied a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) to the Veteran.


REPRESENTATION

Appellant represented by: Kathy A Lieberman, Attorney


ATTORNEY FOR THE BOARD

Cheryl E. Handy, Counsel


INTRODUCTION

The Veteran served on active duty from July 1968 to April 1971, including service in the Republic of Vietnam. The Veteran died in February 1992. The appellant is his surviving spouse.

This matter is before the Board of Veterans' Appeals (Board) on appeal of a rating decision issued in January 2013 by the Department of Veterans Affairs (VA) Regional Office (RO) in Roanoke, Virginia.

In November 2015, the Board denied the appeal for entitlement to DIC benefits based on CUE in a rating decision denying TDIU in May 1979. The Veteran appealed the Board's denial to the United States Court of Appeals for Veterans Claims (Court), which in May 2016 granted a Joint Motion for Remand (JMR) of the parties (VA Secretary and the appellant), vacated the Board's decision, and remanded the case pursuant to 38 U.S.C. § 7252(a) for readjudication consistent with the Motion.


FINDINGS OF FACT

1. The May 1979 rating decision that denied entitlement to TDIU was reasonably supported by the evidence then of record, and the existing legal authority, and it did not contain undebatable error that would have manifestly changed the outcome of that determination.

2. The Veteran's death was not caused by his service-connected disabilities nor did they contribute to the cause of his death; the Veteran was not a prisoner of war; the Veteran had not been receiving compensation as one with a totally disabling service-connected disability for 10 years immediately preceding his death or for a continuous period of five years or more; and, the Veteran is not shown to have been "entitled to receive" such benefits for the requisite length of time prior to his death. 


CONCLUSIONS OF LAW

1. The rating decision which denied entitlement to TDIU, issued in May 1979, was not clearly and unmistakably erroneous. 38 U.S.C.A. §§ 1155, 5109A (West 2014); 38 C.F.R. §§ 3.105(a), 4.16 (1978, 2016).

2. The criteria for entitlement to DIC benefits under 38 U.S.C.A. § 1318 have not been met. 38 U.S.C.A. § 1318 (West 2014); 38 C.F.R. § 3.22 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA and implementing regulations require VA to provide claimants with notice and assistance in substantiating a claim. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016).

In November 2012, the RO sent the appellant a letter, prior to adjudication of her claims, providing notice, which satisfied the requirements of the VCAA. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). While the November 2012 notice did not specifically explain the requirements for proving CUE, the Veteran and her attorney have demonstrated knowledge of these elements in the prosecution of the claim. See November 2012 and February 2013 letters from the Veteran's attorney representative. As such, the Board finds that no additional notice is required. 

Next, VA has a duty to assist the appellant in the development of claims. This duty includes assisting her in the procurement of pertinent treatment records and providing an examination when necessary. 38 C.F.R. § 3.159.

All pertinent, identified medical records have been obtained and considered. Inasmuch as the claim on appeal is one based on clear and unmistakable error, the only evidence that may be considered is that which was in the file at the time of the Veteran's death. Therefore, the provisions of the duty to assist are limited because no new evidence may be sought or obtained. 

As VA satisfied its duties to notify and assist the appellant, no further notice or assistance is required. See 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. §3.159.

DIC Benefits Under 38 U.S.C.A. § 1318

Dependency and indemnity compensation (DIC) may be awarded to a surviving spouse or helpless child upon the service-connected death of a Veteran, with service-connection determined according to the standards applicable to disability compensation. 38 U.S.C.A. § 1310; 38 C.F.R. § 3.5(a). Under 38 U.S.C.A. § 1318, VA death benefits may be paid to a deceased Veteran's surviving spouse or children in the same manner as if the Veteran's death is service-connected, even though the Veteran died of non-service-connected causes, if the Veteran's death was not the result of his or her own willful misconduct and at the time of death, the Veteran was receiving, or was "entitled to receive," compensation for service-connected disability that (1) was continuously rated as totally disabling for the 10 years immediately preceding death, (2) was continuously rated as totally disabling for a period of not less than 5 years from the date of his discharge or release from active duty or (3) was continuously rated as totally disabling for a period of not less than one year immediately preceding death, and the Veteran was a former prisoner of war who died after September 30, 1999. 38 U.S.C.A. § 1318; 38 C.F.R. § 3.22(a).

In this instance, the Veteran was never a prisoner of war. The matter of entitlement to service connection for the cause of the Veteran's death has been decided previously, and considered and denied a claim that the automobile accident that killed the Veteran was in any way attributable to his service-connected mental health disability. At the time of his death, the Veteran had not been receiving compensation for a totally disabling service-connected disability for at least 
10 years and had not been rated as totally disabled due to a service-connected disability for a period of at least five consecutive years at any point since service separation. 

As such, in order for the appellant to qualify for DIC benefits under 38 U.S.C.A. § 1318, it must be established that the Veteran was "entitled to receive" compensation for service-connected disabilities which were totally disabling for at least 10 years at the time of his death. The phrase "entitled to receive" includes a situation in which a veteran, at the time of his death, would have received total disability compensation for service connected disability for the required time period but for clear and unmistakable error (CUE) committed by VA in a decision on a claim filed in the Veteran's lifetime. 38 C.F.R. § 3.22(b)(1). There are also other bases under 38 C.F.R. § 3.22(b)(3) under which a Veteran may be considered to have been entitled to receive the required compensation, but those are not applicable in this case. 

Facts

As noted above, the Veteran died in February 1992. Since the date of the Veteran's death, the appellant has sought entitlement to additional VA benefits based on a variety of arguments. The January 2013 rating decision on appeal here denied entitlement to TDIU for the Veteran on the basis of CUE in the May 1979 rating decision and denied entitlement to compensation for posttraumatic stress disorder (PTSD) under 38 U.S.C.A. § 1151 for the Veteran, again on the basis of CUE in the May 1979 rating decision. The appellant appealed the denial of both claims and the Board decision in November 2015 denied both claims. In the JMR, the appellant stipulated that she explicitly abandoned her claims of entitlement to compensation under 38 U.S.C.A. § 1151 for the cause of the Veteran's death and of entitlement to accrued benefits. Therefore, the only remaining claim before the Board is entitlement to DIC benefits based on CUE in the May 1979 rating decision which denied TDIU benefits to the Veteran.

The May 1979 rating decision which is the central focus of this appeal granted an increased disability rating from 50 percent to 70 percent for the Veteran's diagnosis of anxiety neurosis, deferred the question of an increased disability rating for left wrist fracture residuals pending a new examination, and denied entitlement to TDIU. The specific language of the rating decision stated that the Veteran was "not shown to be permanently unemployable as a result of his" service-connected disabilities. The evidence considered in rendering this decision included the informal claim received in March 1979 and an April 1979 VA examination. Also of record at that time was information from the Veteran's employer regarding his reliability and attendance, a statement from his treating physician in January 1979, and a Social Industrial Survey completed in April 1979.

The Veteran's employer provided a copy of the Veteran's attendance records for the last four months of 1976 and the first four months of 1977. These records showed unexcused absences as often as 7 times in the month of November 1976, time lost from work due to illness ranging from 20 out of 23 days in September 1976 (the most extreme) to none in the succeeding months of November, December, January, or February, and lateness up to six times in February 1977. The employer stated that the Veteran had attributed all of these disruptions to his work as due to his health, including "nerves" and trouble sleeping. The employer also provided a written statement regarding the Veteran's employment and performance and expressed the opinion that the Veteran had demonstrated the potential to be a valuable employee if his health problems could be addressed.

The January 1979 statement by the Veteran's treating physician noted that he was unable to sustain any exertional activity in a consistent manner because of his service-connected left wrist disability. The provider also stated that the Veteran's service-connected mental health disability resulted in violent mood swings and episodes of violent dyscontrol which had prevented him from holding a job.

The VA examination conducted in April 1979 described the Veteran's service-connected left wrist disability as resulting in post-traumatic arthritis, but did not indicate any specific limitations on his employment resulting from the disability. With respect to his mental health disability, the examiner noted that the Veteran felt he was totally disabled because he was unable to obtain work because of his condition. The examiner offered the opinion that in the Veteran's present condition "it is obvious that the Veteran is incapable of gainful employment." The examiner added that he "is not psychotic and he is competent."

The Veteran was also administered a Social Industrial Survey by a Social Worker in April 1979. The provider described the Veteran as one of the most angry veterans he had ever met, one ready to explode in anger. The Veteran had been drinking "heavily and frequently" since his last evaluation and expressed mental conflicts over his aggressiveness, family problems, fear of hurting others and of being hurt himself, and other factors. He had emotional difficulty handling stress and had a low threshold of frustration. He was experiencing problems with his parents, his wife, and his community because of his "constant drinking, anger, irritability, and unstable community behavior." He said that people in his community regarded him as a psychiatric case. He reported that he had last worked in October 1978; he had often worked for this employer, including as a truck driver and a laborer in the plant. He reported that he could work there at any time that he wanted, but he couldn't stay in those jobs long because he got frustrated. The Social Worker stated that as a result of the Veteran's mental health disability he was severely affected both socially and industrially.

Standard Governing CUE Claims

Previous RO determinations, which are final and binding, will be accepted as correct in the absence of CUE. Where evidence establishes such error, the prior decision will be reversed or amended. See 38 C.F.R. § 3.105(a).

CUE is a very specific and rare kind of "error." It is a kind of error, of fact or of law, that when called to the attention of later reviewers compels a conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error. Thus, even where the premise of error is accepted, if it is not absolutely clear that a different result would have ensued, the error complained of cannot be, ipso facto, clear and unmistakable. Fugo v. Brown, 6 Vet. App. 40, 43-44 (1993), (citing Russell v. Principi, 3 Vet. App. 310, 313-14 (1992) (en banc)). 

The Court propounded a three-prongs to determine whether CUE was present in a prior determination: (1) either the correct facts, as they were known at the time, were not before the adjudicator (i.e., more than simple disagreement as to how the facts were weighed or evaluated) or the statutory or regulatory provisions extant at the time were incorrectly applied; (2) the error must be undebatable and of the sort which, had it not been made, would have manifestly changed the outcome at the time it was made; and (3) a determination that there was CUE must be based on the record and law that existed at the time of the prior adjudication in question. Damrel v. Brown, 6 Vet. App. 242, 245 (1994) (quoting Russell, 3 Vet. App. at 313-14).

Total disability ratings for compensation may be assigned, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that, if there is only one such disability, this disability shall be ratable at 60 percent or more, and that, if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a).

Analysis

As discussed above, the law has imposed a very strict standard for claims brought on the basis of clear and unmistakable error or CUE. Specifically, the error must be clear in light of the facts as they were known at the time of the decision being challenged and based on application of the laws and regulations in existence at that time. In May 1979, at the time of the rating decision, 38 C.F.R. § 4.16(a) provided, as it does now, "Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities."

The May 1979 rating decision at issue stated that the Veteran was "not shown to be permanently unemployable as a result of his [service-connected] disabilities." While the language used might be slightly different from that used in 38 C.F.R. § 4.16, the meaning is the same; that is, "unable to secure or follow a substantially gainful occupation" is the equivalent of "unemployable." See VAOPGCPREC 75-91 (Dec. 27, 1991) (holding that the "term 'unemployability,' as used in VA regulations governing total- disability ratings for compensation purposes, is synonymous with inability to secure and follow a substantially gainful occupation). Therefore, the Board finds that the correct legal standard was applied in adjudicating the Veteran's claim in May 1979. 

It was the RO's conclusion that the evidence did not show the service connected disabilities were severe enough to preclude employment. The RO acknowledged that the Veteran's mental health disability was severe, as described in the Social Industrial Survey, in particular by granting an increased disability rating for mental health disability from 50 percent to 70 percent in the same rating decision at issue here. Further, the RO noted that the Veteran was employed "off and on" with an employer where he was certain he could have a job at any time, but he never stayed in the job for very long because of frustration. This discussion of pertinent evidence shows that the evidence as it existed at the time was before the RO and was considered in adjudicating the claim. Even if the Board were now to assume that the service-connected disabilities in May 1979 (both the left wrist disability and the mental health disability) were severe enough to preclude substantially gainful employment, this would not be a sufficient basis for a finding of CUE. Rather, it would be a mere disagreement with how the evidence was weighed, and such a disagreement can never serve as the basis for a finding of CUE. See Fugo, 6 Vet. App. at 44. In short, the evidence of unemployability or entitlement to TDIU at the time of the May 1979 rating decision, while considerable, was not such that reasonable minds could not have differed, particularly where the Veteran was still working sporadically and stated that he could have a job with his employer at any time he wanted.

The Board has also considered the arguments advanced by the appellant and her attorney regarding the Veteran's income during the period prior to the May 1979 rating decision at issue here. Specifically, the appellant has argued that the Veteran's limited income levels, as reflected in the documents submitted by the Veteran, would not qualify as substantially gainful employment under 38 C.F.R. § 4.16. That regulation specifically states that employment which does not generate income above the poverty threshold for a single person as set by the U.S. Census Bureau is not substantially gainful employment, nor is employment in a sheltered workshop or other protected environment. 38 C.F.R. § 4.16; see Ortiz-Valles v. McDonald, 28 Vet. App. 65, 70 (2016) (stating that the regulation compels the conclusion that a veteran might be found unable to secure or follow a substantially gainful occupation when the evidence demonstrates that he or she cannot secure or follow an occupation capable of producing income that is more than marginal-i.e., with income that exceeds the amount published by the U.S. Department of Commerce, Bureau of the Census, as the poverty threshold for one person). For example, the Veteran disclosed that his highest yearly income was in 1972, at which time he earned $4000; the poverty threshold in 1979 for a single person under 
65 was $3912. See JMR, p. 3.

However, the central factor in this case is that the argument brought is one of CUE, which requires consideration of the law and the facts as they were known at the time of the rating decision on appeal, May 1979. See Damrel v. Brown, 6 Vet. App. 242, 245 (1994) (quoting Russell, 3 Vet. App. at 313-14). The language of 38 C.F.R. § 4.16 in force in 1979 did not include the concepts related to the poverty threshold, and marginal employment which are present in the current regulation. See 40 Fed. Reg. 42,535, 42,536 (Sep. 15, 1975). While those concepts were incorporated in 38 C.F.R. § 4.17, the standard for total disability there was different in that service-connection was not critical and age could be considered. 40 Fed. Reg. 42,536 (Sep. 15, 1975). "A familiar principle of statutory construction . . . is that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." See Hamdan v. Rumsfeld, 548 U.S. 557, 578 (2006). In other words, the fact that the applicable regulation, 38 C.F.R. § 4.16, as it existed in 1979 did not address substantially gainful employment, the poverty threshold, and marginal employment, and 38 C.F.R. § 4.17 did include those concepts is to be interpreted as showing that they were not applicable to cases based on 38 C.F.R. § 4.16. In the title of § 4.17 was "Total disability ratings for pension based on unemployability and age of the individual." (Emphasis added.) Therefore, the appellant's arguments regarding the Veteran's income level as proof of CUE in denying in entitlement to TDIU in May 1979 must fail, because the standard argued was not applicable at the time of the rating decision being challenged and the RO applied the correct law.

In sum, the elements of CUE have not been established here. The May 1979 rating decision was consistent with the facts of record and the existing statutory and regulatory provisions at the time. In addition, based on the evidence of record, reasonable minds could differ as to whether the record showed that the Veteran's service connected disabilities rendered him permanently unemployable. Where reasonable minds could differ, the error, if any, is not clear and unmistakable in nature. See Fugo, 6 Vet. App. 40, 43-44 (1993), (citing Russell, 3 Vet. App. at 313-14 (1992) (en banc)). Therefore, the Board finds that there is no CUE in the May 1979 rating decision that denied entitlement to TDIU.

Inasmuch as the Board has determined that CUE in the May 1979 rating decision is not established, the Veteran was not "entitled to receive" TDIU benefit for a period of at least 10 years prior to his death. As such, the requirements for an award of DIC under 38 U.S.C.A. § 1318 have not been met and the claim must be denied.


ORDER

The May 1979 rating decision which denied entitlement to TDIU was not clearly and unmistakably erroneous. 

Entitlement to DIC benefits under 38 U.S.C.A. § 1318 is denied.



______________________________________________
P. Sorisio
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs