﻿Citation Nr: AXXXXXXXX
Decision Date: 11/20/18 Archive Date: 11/19/18

DOCKET NO. 180818-244
DATE: November 20, 2018
ORDER
The motion to revise the October 1970 rating decision awarding a noncompensable disability rating for a right ankle disability, on the basis of clear and unmistakable error (CUE), is denied. 
An effective date of June 2, 2016, for the assignment of an increased disability rating of 10 percent for a right ankle disability is granted. 
An effective date of June 2, 2016, for the grant of service connection for tinnitus is granted. 
An effective date of June 2, 2016, for the grant of service connection for sleep apnea is granted. 
An effective date of June 2, 2016, for the grant of service connection for diabetes mellitus with erectile dysfunction is granted. 
An effective date of June 2, 2016, for the grant of service connection for pelvic neuropathy resulting in voiding dysfunction (hereinafter referred to as voiding dysfunction) is granted. 
An effective date of June 2, 2016, for the grant of service connection for depression is granted. 
An effective date of June 2, 2016, for the grant of service connection for periodic leg movement syndrome is granted. 
An effective date of June 2, 2016, for the award of special monthly compensation (SMC) for loss of use of a creative organ based on erectile dysfunction is granted. 
REMANDED
The claim of entitlement to a compensable disability rating for hypertrophic arthritis of the lumbar spine (lumbar spine disability), from May 4, 1972, is remanded. 
FINDINGS OF FACT
1. The final October 1970 rating decision that assigned a noncompensable disability rating for the Veteran’s right ankle disability was not clear and unmistakably erroneous. 
2. On June 2, 2016, the Veteran filed an intent to file an original claim for compensation benefits. Within one year, in March 2017, the Veteran filed complete claims for an increased rating for his right ankle disability, as well as service connection for tinnitus, sleep apnea, diabetes mellitus with erectile dysfunction, voiding dysfunction, depression, and periodic leg movement syndrome. 
3. In a July 2017 rating decision, the local Regional Office (RO), in pertinent part, increased the disability rating for the Veteran’s right ankle disability from 0 percent to 10 percent, effective as of March 2, 2017. It also granted service connection for tinnitus, effective as of March 7, 2017. 
4. In a March 2018 rating decision, the RO, in pertinent part, granted service connection for voiding dysfunction, sleep apnea, periodic leg movement syndrome, diabetes mellitus with erectile dysfunction, and depression. The effective dates for service connection for all of these disabilities were the respective filing dates of the formal claim in March 2017. In addition, the RO granted SMC for loss of use of a creative organ based on erectile dysfunction, effective as of March 20, 2017. 
CONCLUSIONS OF LAW
1. The assignment of a noncompensable disability rating for a right ankle disability in an October 1970 rating decision was not clearly and unmistakably erroneous. 38 U.S.C. §§ 5109A, 7105; 38 C.F.R. § 3.105(a). 
2. The criteria for entitlement to an effective date prior to March 2, 2017, for the grant of a 10 percent disability rating for a right ankle disability have been met. 38 U.S.C. § 5110; 38 C.F.R. § 3.400. 
3. The criteria for entitlement to an effective date earlier than March 7, 2017, for the grant of service connection for tinnitus have not been met. 38 U.S.C. §§ 5101, 5107, 5110; 38 C.F.R. §S 3.155, 3.400. 
4. The criteria for entitlement to an effective date earlier than March 20, 2017, for the grant of service connection for sleep apnea have been met. 38 U.S.C. §§ 5101, 5107, 5110; 38 C.F.R. §S 3.155, 3.400. 
5. The criteria for entitlement to an effective date earlier than March 20, 2017, for the grant of service connection for diabetes mellitus with erectile dysfunction have been met. 38 U.S.C. §§ 5101, 5107, 5110; 38 C.F.R. §S 3.155, 3.400. 
6. The criteria for entitlement to an effective date earlier than March 20, 2017, for the grant of service connection for voiding dysfunction have been met. 38 U.S.C. §§ 5101, 5107, 5110; 38 C.F.R. §S 3.155, 3.400. 
7. The criteria for entitlement to an effective date earlier than March 21, 2017, for the grant of service connection for depression have been met. 38 U.S.C. §§ 5101, 5107, 5110; 38 C.F.R. §S 3.155, 3.400. 
8. The criteria for entitlement to an effective date earlier than March 27, 2017, for the grant of service connection for periodic leg movement syndrome have been met. 38 U.S.C. §§ 5101, 5107, 5110; 38 C.F.R. §S 3.155, 3.400. 
9. The criteria for entitlement to an effective date earlier than March 20, 2017, for the award of SMC for loss of use of a creative organ based on erectile dysfunction have been met. 38 U.S.C. §§ 5101, 5107, 5110; 38 C.F.R. §S 3.155, 3.400. 
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The Veteran had honorable active duty service with the United States Army from January 1966 to June 1966. He had additional service in the National Guard. 
On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework. 
In his April 2018 RAMP opt-in election form, the Veteran included the claims of entitlement to service connection for bilateral hearing loss, left upper extremity neuropathy, right upper extremity neuropathy, left lower extremity neuropathy, right lower extremity neuropathy, a left knee disorder, and a right knee disorder. However, these issues were not adjudicated by the Agency of Original Jurisdiction (AOJ) in any rating decision issued following submission of the April 2018 RAMP opt-in election form. Therefore, the Board of Veterans’ Appeals (Board) does not have jurisdiction over these issues, and they are referred to the AOJ for appropriate action. 
Clear and Unmistakable Error
On March 28, 2017, the Veteran asserted that the October 1970 rating decision that assigned a noncompensable disability rating for a right ankle disability was the result of a clear and unmistakable error (CUE) by failing to apply the correct diagnostic code in evaluating this disability. He argues that the disability should have been rated under Diagnostic Code 5003 for arthritis. 
Unappealed rating decisions are final. 38 U.S.C. § 7105. A final rating decision is not subject to revision on the same factual basis except by appellate authorities, or on the basis of CUE. 38 C.F.R. § 3.104(a). If the evidence establishes CUE, the prior decision will be reversed or amended. 38 C.F.R. § 3.105(a). 
CUE is a very specific and rare kind of “error.” It is the kind of error, of fact or of law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error. Simply to claim CUE on the basis that previous adjudications had improperly weighed and evaluated the evidence can never rise to the stringent definition of CUE. Similarly, neither can broad-brush allegations of “failure to follow the regulations” or “failure to give due process,” or any other general, nonspecific claim of “error.” Fugo v. Brown, 6 Vet. App. 40, 43-44 (1993). In addition, failure to address a specific regulatory provision involves harmless error unless the outcome would have been manifestly different. Id. at 44. 
If a veteran wishes to reasonably raise a claim of CUE, there must be some degree of specificity as to what the alleged error is and, unless it is the kind of error that, if true, would be CUE on its face, persuasive reasons must be given as to why one would be compelled to reach the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the alleged error. Bustos v. West, 179 F.3d 1378, 1381 (Fed. Cir. 1999), cert. denied, 528 U.S. 967 (1999); Fugo, 6 Vet. App. at 43-44. If the error alleged is not the type of error that, if true, would be CUE on its face, if the veteran is only asserting disagreement with how the RO evaluated the facts before it, or if the veteran has not expressed with specificity how the application of cited laws and regulations would dictate a “manifestly different” result, the claim must be denied or the appeal to the Board terminated because of the absence of legal merit or the lack of entitlement under the law. Luallen v. Brown, 8 Vet. App. 92 (1995); Caffrey v. Brown, 6 Vet. App. 377, 384 (1994). Further, VA’s failure in the duty to assist cannot constitute CUE. See Cook v. Principi, 318 F.3d 1334, 1346 (Fed. Cir. 2003). 
Finally, the Board notes that a disagreement with how the facts were weighed or evaluated is not adequate to raise a valid argument of CUE. Russell v. Principi, 3 Vet. App. 310, 313-14 (1992). 
Based on the available evidence, the Board concludes that there was no CUE in the RO’s October 1970 rating decision for failing to apply Diagnostic Code 5003 for arthritis. 
In the October 1970 rating decision, the Veteran was assigned a noncompensable disability rating for his right ankle disability under 38 C.F.R. § 4.71a, Diagnostic Code 5271 for limitation of motion. The criteria for rating limitation of motion of the ankle are the same today as they were in 1970. Under Diagnostic Code 5271, a 10 percent disability rating is warranted for moderately limited motion, and 20 percent for marked limited motion. A noncompensable evaluation (zero percent) is assigned in every instance where the Schedule does not provide a zero evaluation and the requirement for a compensable evaluation has not been met. 38 C.F.R. § 4.31. Terms such as “moderate” and “marked” are not defined in the Schedule; rather than applying a mechanical formula, VA must evaluate all the evidence to the end that its decisions are “equitable and just.” 38 C.F.R. § 4.6. Normal range of motion of the ankle is zero to 20 degrees of dorsiflexion, and zero to 45 degrees of plantar flexion. 38 C.F.R. § 4.71a, Plate II. 
At the time of the October 1970 rating decision, the September 1969 VA examination revealed no significant osseous or joint abnormality. A private treatment record dated April 1970 showed that X-rays of the Veteran’s feet revealed arthritis lipping navicular, bilaterally. Dr. I.S. noted that the Veteran had weak foot with beginning osteoarthritis. Additionally, the September 1970 VA examination revealed that the Veteran’s right ankle did not show any enlargement or deformity. There was slight tenderness of the ankle, which was generalized both on the medial as well as lateral aspect of the joint and also across the top of the tarsal region. The examiner further noted that the tendons moved normally in the area of the ankle and that the toes were not deformed or fixed. The Veteran demonstrated normal gait. Thus, none of the medical evidence at the time of the October 1970 rating decision showed that the Veteran had arthritis of the right ankle. 
In the Board’s view, the October 1970 rating decision assigning a noncompensable rating under Diagnostic Code 5271 was based on the factual finding that the Veteran demonstrated no perceptible limitation of motion of his right ankle at that time. Furthermore, the RO did not evaluate the disability under Diagnostic Code 5003, as the evidence did not show that the Veteran had arthritis of the right ankle at that time; thus, Diagnostic Code 5003 did not apply. While the Board recognizes that the Veteran may disagree with this finding, an assertion of CUE does not allow the Board to reevaluate the evidence that was in VA’s possession at the time the rating decision was issued. Rather, the correct course of action would have been to appeal this decision by submitting a notice of disagreement within a year of receiving it. 
For the reasons set forth above, the Board finds that the October 1970 rating decision was not CUE, and a revision of the October 1970 rating decision is not warranted. 
Earlier Effective Date
A claimant may indicate a desire to file a claim for benefits by submitting an intent to file a claim to VA, which must provide sufficient identifiable or biographical information to identify the claimant. If VA receives a complete application form prescribed by the Secretary (as defined in 38 C.F.R. § 3.160(a)) appropriate to the benefit sought within one year of receipt of the intent to file a claim, then VA will consider the complete claim filed as of the date that the intent to file a claim was received. 38 C.F.R. § 3.155(b). 
Generally, the effective date of an evaluation and award of pension, compensation, or dependency and indemnity compensation based on an original claim, a claim for increase, or a claim reopened after final disallowance, will be the date of receipt of the claim or the date entitlement arose, whichever is the later. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400. Unless otherwise provided, the effective date of compensation will be fixed in accordance with the facts found, but will not be earlier than the date of receipt of the claimant’s application. 38 U.S.C. § 5110(a). 
The Veteran contends that he is entitled to an earlier effective date for the grant of an increased rating of 10 percent for his right ankle disability. He also contends that he is entitled to an earlier effective date for the award of service connection for tinnitus, sleep apnea, diabetes mellitus with erectile dysfunction, voiding dysfunction, depression, and periodic leg movement syndrome. Finally, he contends that he is entitled to an earlier effective date for the award of SMC for loss of use of a creative organ based on erectile dysfunction. The Veteran asserts that an effective date of June 2, 2016, should be assigned for the foregoing. 
The record reflects that on June 2, 2016, the Veteran filed a VA Form 21-0966, Intent to File a Claim for Compensation and/or Pension, or Survivors Pension and/or DIC. 
On March 2, 2017, the Veteran filed an increased rating claim for his service-connected right ankle disability. 
On March 7, 2017, the Veteran filed a claim of entitlement to service connection for tinnitus. 
On March 20, 2017, the Veteran filed claims of entitlement to service connection for sleep apnea, diabetes mellitus, erectile dysfunction, and voiding dysfunction. 
On March 21, 2017, the Veteran filed a claim of entitlement to service connection for depression. 
Finally, on March 27, 2017, the Veteran filed a claim of entitlement to service connection for periodic leg movement syndrome. 
In a July 2017 rating decision, the RO, in pertinent part, increased the disability rating for the Veteran’s right ankle disability from 0 percent to 10 percent, effective as of March 2, 2017. It also granted service connection for tinnitus, effective as of March 7, 2017. 
In a March 2018 rating decision, the RO, in pertinent part, granted service connection for voiding dysfunction, sleep apnea, periodic leg movement syndrome, diabetes mellitus with erectile dysfunction, and depression. The effective dates for service connection for all of these disabilities were the respective filing dates of the formal claim in March 2017. In addition, the RO granted SMC for loss of use of a creative organ based on erectile dysfunction, effective as of March 20, 2017. 
The Board notes that all of the claims were filed within one year of VA receiving the Veteran’s June 2016 intent to file a claim. While the claims were filed in separate applications, all of the claims were, nevertheless, filed within one year of the intent to file. Thus, viewing the evidence in a light most favorable to the Veteran, the claims are considered to have been filed on June 2, 2016, which could be construed as either an intent to file claim a or a complete claim, encompassing all claims filed within one year. Therefore, June 2, 2016 (the date of the intent to file a claim) is the earliest possible (and appropriate) effective date for the following: the grant of an increased rating of 10 percent for his right ankle disability; the award of service connection for tinnitus, sleep apnea, diabetes mellitus with erectile dysfunction, voiding dysfunction, depression, and periodic leg movement syndrome; and, the award of SMC for loss of use of a creative organ based on erectile dysfunction. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400(b)(2). 
Accordingly, the Board finds that an effective date of June 2, 2016, and no earlier, is warranted for all of the aforementioned awards. 
 
REASONS FOR REMAND
The issue of entitlement to a compensable rating for a lumbar spine disability is remanded to correct a duty to assist error that occurred prior to the July 2018 rating decision on appeal. The AOJ did not obtain a VA examination prior to the July 2018 rating decision on appeal. However, based on the evidence associated with the claims file prior to the July 2018 rating decision, the Board finds that a VA examination/medical opinion is required to determine the current level of severity of the Veteran’s lumbar spine disability. The record reflects that the most recent VA examination for this disability was conducted in May 1972. As such, the Board does not have sufficient medical evidence to determine whether a compensable disability rating from May 4, 1972, is warranted. 
The matter is REMANDED for the following action:
Schedule the Veteran for an examination by an appropriate clinician to determine the severity of his service-connected lumbar spine disability. All necessary tests and studies, to include X-rays and range of motion studies, should be completed, and all clinical findings reported in detail. 
(a) The examiner must determine the current severity of the Veteran’s lumbar spine disability. 
(b) Conduct range of motion testing of the Veteran’s lumbar spine, expressed in degrees in active motion, passive motion, weight-bearing, and nonweight-bearing (where applicable). The examiner is requested, to the extent possible, to provide estimates of range of motion if the Veteran asserts he is unable to perform range of motion testing due to pain. 
(c) Render specific findings as to whether, during the examination, there is objective evidence of pain on motion, weakness, excess fatigability, or incoordination associated with the lumbar spine. If pain on motion is observed, the VA examiner should indicate the point at which pain begins. 
(d) Significantly, the VA examiner should indicate whether, and to what extent, the Veteran experiences functional loss of his lumbar spine due to pain or any of the other symptoms during flare-ups or with repeated use. To the extent possible, the VA examiner should express any additional functional loss in terms of additional degrees of limited motion. If the examiner cannot provide the above-requested opinion without resorting to speculation, he or she should state whether all procurable medical evidence had been considered, to specifically include the Veteran’s description as to the severity, frequency, duration of the flare-ups and his description as to the extent of functional loss during a flare-up and after repetitive use over time; whether the inability is due to the limits of medical community or the limits of the examiner’s medical knowledge; and whether there is additional evidence, which if obtained, would permit the opinion to be provided. 

(CONTINUED ON NEXT PAGE)
A complete rationale must be provided for all opinions offered. If an opinion cannot be offered without resort to mere speculation, the examiner must fully explain why this is the case and identify what additional evidence, if any, would allow for a more definitive opinion. 
 
B. MULLINS
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD Y. MacDonald, Associate Counsel