Citation Nr: AXXXXXXXX
Decision Date: 06/30/21 Archive Date: 06/30/21

DOCKET NO. 200409-76284
DATE: June 30, 2021

ORDER

An effective date prior to October 2, 2018 for service connection for right chest involving muscle group XXII, residual of gunshot wound, is denied. 

FINDINGS OF FACT

1. In a final rating decision, dated in April 1971, the RO granted service connection for scars, right chest, involving Muscle Group XXI, residual of gunshot wound, with an effective date of March 20, 1971; there was no medical evidence of record at that time to show an injury to Muscle Group XXII or residual compensable scars. 

2. The RO's April 1971 rating decision did not contain a clear and unmistakable error (CUE), as it represented a reasonable application of the known facts to the law then in existence; the factual evidence and competent medical opinion of record did not show that 

3. On October 2, 2018, the Veteran filed an increased rating for his scars, right chest, involving Muscle Group XXI, residual of gunshot wound.

4. In April 2020, the RO inter alia granted service connection for right chest involving muscle group XXII, residual of gunshot wound, with an effective date of October 2, 2018.

CONCLUSIONS OF LAW

1. Clear and unmistakable error is not shown in the April 1971 RO decision which granted service connection for scars, right chest, involving Muscle Group XXI, residual of gunshot wound, with an effective date of March 20, 1971. 38 U.S.C. § 7111; 38 C.F.R. §§ 20.1400, 20.1403, 20.1405. 

2. The criteria for an effective date prior to October 2, 2018, for the grant of service connection for right chest involving muscle group XXII, residual of gunshot wound, to include as based on a claim that there was clear and unmistakable error in an RO rating decision dated in April 1971, have not been met. 38 U.S.C. §§ 5107, 5110(b)(2), 7105; 38 C.F.R. §§ 3.102, 3.104, 3.105(a), 3.159, 3.400(b)(2). 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

In April 2020, the RO denied the Veteran's claim for an effective date for service connection prior to October 2, 2018 for service-connected right chest involving muscle group XXII, residual of gunshot wound, to include based on a claim of CUE in an April 1971 RO decision. 

In April 2020, the Veteran filed a decision review request: Board Appeal Notice (notice of disagreement) (VA Form 10182) and selected the Direct Review lane. As explained in the VA Form 10182, "direct review" means that the Board's decision must be based upon the evidence of record at the time of the prior decision, with no evidence submission or hearing request. 

1. Effective date prior to October 2, 2018 for service connection for right chest involving muscle group XXII, residual of gunshot wound, to include as due to a clear and unmistakable error in an April 1971 RO decision. 

The Veteran argues that an effective date prior to October 18, 2018 is warranted for the grant of service connection for right chest involving muscle group XXII, residual of gunshot wound, to include based on the claim that there was clear and unmistakable error in an April 1971 RO rating decision. He argues that he should have received a separate evaluation for this disability at the time of the RO's April 1971 decision, or, in the alternative, he should have received a separate rating for scars associated with the exit wound from his right chest gunshot, i.e., on his posterior trunk.

The relevant administrative history is as follows: The Veteran is shown to have served in Vietnam. See Veteran's discharge (DD Form 214). 

In an April 1971 RO rating decision, the RO granted service connection for scars, right chest, involving Muscle Group XXI, residual of gunshot wound, with an effective date of March 20, 1971. There was no appeal, and the RO's decision became final. 38 U.S.C. § 7105(c). 

On October 2, 2018, the Veteran filed claims that included an increased rating claim for his scar, right chest, involving Muscle Group XXI, residual of gunshot wound. See Veteran's claim (VA Form 21-526EZ), received on October 2, 2018. 

In December 2019, the RO denied the Veteran's claim for an increased rating for his scars, right chest involving Muscle Group XXI, residual of gunshot wound, and granted service connection for right chest involving muscle group XXII, residual of gunshot wound, evaluated as 20 percent disabling, with an effective date of October 2, 2018. 

In February 2020, the Veteran filed a decision review request: higher-level review (VA Form 20-0996) on issues that include entitlement to an effective date prior to October 2, 2018 for service connection for right chest involving muscle group XXII, residual of gunshot wound and asserted that an effective date in April 1971 is warranted. 

In April 2020, the RO denied a claim for an effective date prior to October 2, 2018 for service connection for right chest involving muscle group XXII, residual of gunshot wound, based on a claim of clear and unmistakable error in an April 1971 RO decision. The RO stated the following: As the objective medical evidence of record at the time did not show residual injuries to Muscle Group XXII. The objective medical findings at the time of his original grant for compensation only showed injury to Muscle Group XXI. In the absence of objective medical findings showing residual injury to Muscle Group XXII at the time of his original grant of service connection, an earlier effective date is not warranted until he successfully re-opened his claim for benefits on October 2, 2018, that resulted in the grant of service connection to Muscle Group XXII. 

The effective date for disability compensation claims based on direct service connection is the day following separation from active service, or the date entitlement arose, if the claim is received within one year after separation from service; otherwise, the effective date is the date of the receipt of claim, or the date that the entitlement arose, whichever is later. 38 U.S.C. § 5110; 38 C.F.R. § 3.400 (b)(2)(i). 

Previous determinations that are final and binding, including decisions of service connection and other matters, will be accepted as correct in the absence of clear and unmistakable error (CUE). Where evidence establishes such error, the prior rating decision will be reversed or amended. For the purpose of authorizing benefits, the rating or other adjudicatory decision which constitutes a reversal of a prior decision on the grounds of CUE has the same effect as if the corrected decision had been made on the date of the reversed decision. 38 C.F.R. § 3.105 (a). 

CUE is a very specific and rare kind of error. It is the kind of error, of fact or of law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error. Simply to claim CUE on the basis that previous adjudications had improperly weighed and evaluated the evidence can never rise to the stringent definition of CUE. Similarly, neither can broad-brush allegations of failure to follow the regulations or failure to give due process, or any other general, nonspecific claim of error. Fugo v. Brown, 6 Vet. App. 40, 43-44 (1993). In addition, failure to address a specific regulatory provision involves harmless error unless the outcome would have been manifestly different. Id. at 44. 

The Court has held that there is a three-pronged test to determine whether CUE is present in a prior determination: (1) [e]ither the correct facts, as they were known at the time, were not before the adjudicator (i.e., more than a simple disagreement as to how the facts were weighed or evaluated) or the statutory or regulatory provisions extant at the time were incorrectly applied, (2) the error must be undebatable and of the sort which, had it not been made, would have manifestly changed the outcome at the time it was made, and (3) a determination that there was CUE must be based on the record and law that existed at the time of the prior adjudication in question. Damrel v. Brown, 6 Vet. App. 242, 245 (1994). 

The Court has consistently stressed the rigorous nature of the concept of CUE. Clear and unmistakable error is an administrative failure to apply the correct statutory and regulatory provisions to the correct and relevant facts, it is not mere misinterpretation of facts. Oppenheimer v. Derwinski, 1 Vet. App. 370, 372 (1991). Clear and unmistakable error requires that error, otherwise prejudicial, must appear undebatable. Akins v. Derwinski, 1 Vet. App. 228, 231 (1991). Clear and unmistakable errors are errors that are undebatable, so that it can be said that reasonable minds could only conclude that the original decision was fatally flawed at the time it was made. Russell v. Principi, 3 Vet. App. 310, 313-14 (1992) (en banc).

The evidence of record before the RO at the time of its April 1971 decision included the Veteran's service treatment reports, which showed that in February 1970, he sustained a through-and-through gunshot wound to the upper right chest. His treatment included several chest tubes and a right hemopneumothorax. He was put on a temporary profile and returned to duty. A March 1971 report noted well-healed entry, exit, and chest tube wounds, no evidence of artery or nerve involvement, and no basis in the regulations for a permanent profile. The Veteran's separation examination report, dated in March 1971, showed that he was noted to have anterior entrance and posterior exit scars at the right chest, and a chest tube scar at the right lateral chest. There was a notation of GSW (gunshot wound), right chest, ND (not disabling). The Veteran was noted to have minimal residuals due to his gunshot wound. 

At the time of the RO's April 1971 decision, there was no post-service medical evidence of record. 

The Board notes that in May 1971, the Veteran filed a claim for an increased rating. In July 1971, he was afforded an examination. The July 1971 VA examination report, dated in July 1971, noted a history of an AK-47 gunshot wound to the right chest that had been treated with a chest tube for a prolonged tie because of continued air leaks and a later infection. On examination, entrance and exit wounds were noted on the right chest, with five small chest tube scars that were well-healed and without significant tissue loss. 

In September 1971, the RO denied the Veteran's increased rating claim. 

The RO's April 1971 decision granted service connection for the Veteran's scars, right chest involving Muscle Group XXI, residual of a gunshot wound, and evaluated this disability as 20 percent disabling under Diagnostic Code (DC) 5321. 

Under the rating criteria in effect at the time of the RO's April 1971 decision, Injuries to Muscle Group XXI were contemplated under 38 C.F.R. § 4.73, Diagnostic Code 5321 (1970), which provided that a 20 percent rating was warranted for a severe or moderately severe disability. 

The rating criteria governing muscle injuries provided that the cardinal symptoms of muscle disability were weakness, fatigue-pain, and uncertainty of movement. 38 C.F.R. § 4.54 (1970). In addition, the pertinent provisions of 38 C.F.R. § 4.56 (1970) provided as follows: 

(c) Moderately severe disability of muscles. 

Type of injury. Through and through or deep penetrating wound by high velocity missile of small size or large missile of low-velocity, with debridement or with prolonged infection or with sloughing of soft parts, intermuscular cicatrization. 

Objective findings. Entrance and (if present) exit scars relatively large and so situated as to indicate track of missile through important muscle groups. 

(emphasis added). 

(d) Severe disability of muscles. 

Type of injury. Through and through or deep penetrating wound due to high velocity missile, or large or multiple low velocity missiles, or explosive effect of high velocity missile, or shattering bone fracture with extensive debridement or prolonged infection and sloughing of soft parts, intermuscular binding and cicatrization. 

History and complaint. As under moderately severe (paragraph (c) of this section), in aggravated form. 

Objective findings. Extensive ragged, depressed, and adherent scars of skin so situated as to indicate wide damage to muscle groups in track of missile. (emphasis added). 

The Board finds that CUE is not shown. At the time of the RO's April 1971 decision, the criteria for a moderately severe or severe injury at 38 C.F.R. § 4.56 specifically included a through and through or deep penetrating wound due to high velocity missile, and entrance and exit scars. Thus, the Veteran's 20 precent rating included consideration of his entrance and exit scars due to his gunshot wound. At the time of the RO's April 1971 decision, the evidence did not show that the Veteran's Muscle Group XXII was affected by his gunshot wound. Pyramiding, which is the evaluation of the same disability or the same manifestation of a disability under different diagnostic codes, is to be avoided when rating a veteran's service-connected disabilities. 38 C.F.R. § 4.14 (1970). Therefore, any "failure" to discuss regulations related to an injury to Muscle Group XXII or scars did not constitute CUE as there is nothing to suggest that, had there been a written discussion of such regulations, a different result would have ensued. Crippen v. Brown, 9 Vet. App. 412, 421 (1996); 38 C.F.R. § 4.73, DC 5322 (1970). There was no evidence to show that the Veteran had second or third-degree burn scars. See 38 C.F.R. § 4.118, DCs 7801 and 7802 (1970). There was no evidence to show that his gunshot wound exit scar was productive of a superficial scar that was poorly nourished and accompanied by repeated ulcerations, a superficial scar that was tender and painful on objective demonstration, or that it was productive of a limitation of function. See 38 C.F.R. § 4.118, DCs 7803 - 7805 (1970). 

The Board further notes that the earliest relevant post-service medical evidence of record is a July 1971 VA examination report, and that even if the findings in that report had been of record at the time of the RO's April 1971 decision, the analysis of this CUE would not be affected as there were no findings to show the criteria as noted above. 

Based on the foregoing, given the findings of record at the time of the April 1971 RO decision, the Board finds that there is no evidence of an undebatable error, which, had it not been made, would have manifestly changed the outcome at the time it was made. Rather, a review of the evidence, and the applicable statutory and regulatory provisions, clearly demonstrates that there was no failure by that RO to apply the correct statutory and regulatory provisions to the correct and relevant facts. The Veteran's claim that the April 1971 rating decision was clearly and unmistakably erroneous must therefore be denied. 38 C.F.R. § 3.105(a).

Following the RO's September 1971 rating decision, the Veteran did not file a claim for an increased rating for his scars, right chest, involving Muscle Group XXI, residual of gunshot wound, until October 2, 2018. Based on medical evidence obtained during the development of that claim, all of which is dated after he filed that claim, the RO determined that the medical evidence warranted a separate grant of service connection for right chest involving muscle group XXII, residual of gunshot wound, with an effective date of October 2, 2018. The October 2, 2018 date of receipt of the Veteran's claim is the appropriate effective date, because even if the date that the entitlement arose could be found to precede it, the latter of the two dates controls. 38 C.F.R. § 3.400. Given the foregoing, the earliest possible effective date for the grant of service connection for right chest involving muscle group XXII, residual of gunshot wound, is October 2, 2018. See 38 C.F.R. § 3.400. Accordingly, the claim is denied. 

 

 

MATTHEW W. BLACKWELDER

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board T.S.E., Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.