﻿Citation Nr: AXXXXXXXX
Decision Date: 05/02/19 Archive Date: 05/01/19

DOCKET NO. 181004-488
DATE: May 2, 2019

ORDER

Entitlement to service connection for insomnia is denied.

Entitlement to service connection for chronic dysmenorrhea is denied.

Entitlement to service connection for a right elbow disability is denied.

Entitlement to service connection for a right hip disability is denied.

Entitlement to service connection for a right thigh and leg disability is denied.

A 30 percent rating, but no higher, for abdominal adhesions is granted.

Entitlement to a rating in excess of 10 percent for right carpal tunnel syndrome is denied.

Entitlement to a rating in excess of 10 percent for left carpal tunnel syndrome is denied.

Entitlement to a rating in excess of 10 percent for radiculopathy of the right lower extremity is denied.

Entitlement to a rating in excess of 10 percent for radiculopathy of the left lower extremity is denied.

Entitlement to a compensable rating for allergic rhinitis is denied.

An effective date of April 9, 2003, but no earlier, for the grant of service connection for lumbosacral strain is granted. 

An effective date of April 9, 2003, but no earlier, for the grant of service connection for right and left carpal tunnel syndrome is granted. 

The claim of CUE in the July 2003 that denied service connection for anxiety and depression is denied.

REMANDED

Entitlement to service connection for eczema of the hands is remanded.

Entitlement to service connection for a gastrointestinal disability, to include peptic ulcers and gastroesophageal reflux disease (GERD), is remanded.

Entitlement to service connection for sinusitis is remanded.

Entitlement to service connection for sleep apnea is remanded.

Entitlement to a compensable rating for supraventricular tachycardia is remanded

Entitlement to an effective date prior to August 16, 2016, for the grant of service connection for radiculopathy of the bilateral extremities, to include on the basis of CUE, is remanded.

FINDINGS OF FACT

1. The Veteran does not have insomnia. 

2. The Veteran does not have chronic dysmenorrhea.

3. The Veteran does not have a right elbow disability. 

4. The Veteran is service connected for radiculopathy of the right lower extremity; the evidence does not indicate that she has a separate right hip disability. 

5. The Veteran is service connected for radiculopathy of the right lower extremity; the evidence does not indicate that she has a separate right thigh and leg disability. 

6. The Veteran’s service-connected abdominal adhesions symptoms are not controlled by continuous treatment.

7. The Veteran’s service-connected right and left carpal tunnel syndrome symptomatology is no more than mild in severity. 

8. The Veteran’s service-connected radiculopathy of the right and left lower extremities is no more than mild in severity. 

9. The Veteran’s service-connected allergic rhinitis has not resulted in nasal polyps, greater than 50 percent obstruction of the nasal passages on both sides, or complete obstruction on one side. 

10. The Veteran filed an initial claim for service connection for a low back disability and bilateral carpal tunnel syndrome on April 9, 2003.

11. The July 2003 rating decision that denied service connection for a low back disability and bilateral carpal tunnel syndrome contains CUE. 

12. The July 2003 rating decision that denied service connection for anxiety and depression was adequately supported by the evidence then of record, considered the correct facts as they then existed, correctly applied statutory or regulatory provisions extant at that time, and did not contain an undebatable or egregious error of fact or law that was outcome determinative.

CONCLUSIONS OF LAW

1. The criteria for service connection for insomnia are not met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303 (2018). 

2. The criteria for service connection for chronic dysmenorrhea are not met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303 (2018). 

3. The criteria for service connection for a right elbow disability are not met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303 (2018). 

4. The criteria for service connection for a right hip disability are not met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303 (2018). 

5. The criteria for service connection for a right thigh and leg disability are not met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303 (2018). 

6. The criteria for a 30 percent rating, but no higher, for abdominal adhesions are met. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 4.7, 4.116, Diagnostic Code 7614 (2018).

7. The criteria for a rating in excess of 10 percent for right carpal tunnel syndrome are not met. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 4.7, 4.124a, Diagnostic Code 8515 (2018).

8. The criteria for a rating in excess of 10 percent for left carpal tunnel syndrome are not met. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 4.7, 4.124a, Diagnostic Code 8515 (2018).

9. The criteria for a rating in excess of 10 percent for radiculopathy of the right lower extremity are not met. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 4.7, 4.124a, Diagnostic Code 8520 (2018).

10. The criteria for a rating in excess of 10 percent for radiculopathy of the left lower extremity are not met. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 4.7, 4.124a, Diagnostic Code 8520 (2018).

11. The criteria for a compensable rating for allergic rhinitis are not met. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 4.7, 4.97, Diagnostic Code 6522 (2018).

12. The criteria for an effective date of April 9, 2003, for the grant of service connection for lumbosacral strain are met. 38 U.S.C. §§ 5109A, 5110 (2012); 38 C.F.R. §§ 3.105, 3.400 (2018). 

13. The criteria for an effective date of April 9, 2003, for the grant of service connection for bilateral carpal tunnel syndrome are met. 38 U.S.C. §§ 5109A, 5110 (2012); 38 C.F.R. §§ 3.105, 3.400 (2018).

14. The July 2003 rating decision that denied service connection for anxiety and depression was not clearly and unmistakably erroneous. 38 U.S.C. § 5109A (2012); 38 C.F.R. § 3.105(a) (2018). 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program.

The Veteran had active air service from January 1997 to June 2001. The Veteran selected the Higher-Level Review lane when she submitted the RAMP election form. Accordingly, the August 2018 RAMP rating decision considered the evidence of record prior to the issuance of the August 2017 rating decision. The Veteran timely appealed that RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ). 

The Board notes that the Veteran’s claims for service connection for insomnia, dysmenorrhea, a right elbow disability, a right hip disability, and sleep apnea were previously denied in July 2003 and October 2016 rating decisions. In the August 2018 RAMP decision, the AOJ readjudicated those claims on a de novo basis thereby implicitly finding that new and relevant evidence had been submitted. The AOJ also found that (1) the Veteran was treated for a right elbow sprain during service in July 2000; (2) an August 2012 VA treatment record indicated that she was treated for right hip pain; (3) she was complained of right thigh pain during service in September 1998; and (4) VA treatment records showed a diagnosis of sleep apnea in 2010 or 2011. The Board is bound by the AOJ’s favorable findings. AMA, Pub. L. No. 115-55, § 5104A, 131 Stat. 1105, 1106-07.

Service Connection Claims

1. Insomnia

The Veteran’s service treatment records are unremarkable for any complaints, treatment, or diagnoses of insomnia.

A November 2004 VA treatment record indicated that the Veteran reported experiencing chronic low back and abdominal pain. She reported that she slept only three to four hours per night, that it was not due to pain, and that she was “just up.” The Veteran’s VA treatment records are otherwise unremarkable for any complaints, treatment or diagnoses of insomnia.

During a June 2017 VA examination, the Veteran reported that it took her 30 minutes to one hour to initiate sleep and that she woke up during the night due to pain and nocturia. She reported that she slept four to six hours per night. It was also noted that she had been diagnosed with sleep apnea and provided a CPAP machine but that she no longer wore it. 

The VA examiner opined that based on a review of the claims file and clinical interview, the Veteran did not meet the diagnostic criteria for insomnia or any other mental health disorder related to active service or a service-connected disability. There is no medical opinion to the contrary.

The Board has also considered the lay evidence of record. The Veteran is competent to describe what she has personally observed or experienced; however, the ultimate questions of diagnosis and etiology in this case extend beyond an immediately observable cause-and-effect relationship and are beyond the competence of lay witnesses. 

Based on the foregoing, the Board finds that the preponderance of the evidence is against the claim and entitlement to service connection for insomnia is not warranted. 38 U.S.C. § 5107(b) (2012); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

2. Chronic Dysmenorrhea

The Veteran’s service treatment records indicated that she experienced inter-menstrual spotting and was diagnosed with uterine fibroids in November 1998. In May 2000, she underwent a supracervical hysterectomy. She continued to experience chronic pelvic pain, dysmenorrhea, and breakthrough bleeding. In April 2001, she underwent a diagnostic laparoscopy, lysis of adhesions, trachelectomy of the cervix, and revision of an abdominal scar. In May 2001, she reported that her pain was much improved and that she experienced no bleeding or cramps. 

The Veteran is service connected for residuals of the hysterectomy, abdominal adhesions, and an abdominal scar. Although the Veteran has multiple symptoms related to those conditions, the evidence does not indicate that she has had dysmenorrhea since she was discharged from service in June 2001. 

Accordingly, the Board finds that the preponderance of the evidence is against the claim and entitlement to service connection for chronic dysmenorrhea is not warranted. 38 U.S.C. § 5107(b) (2012); Gilbert, 1 Vet. App. At 49. 

3. Right Elbow Disability 

The Veteran’s service treatment records indicated that she complained of right elbow pain after falling at work in June 2000. In July 2000, mild tenderness was noted over the medial condyle with pain on valgus stress. She had full range of motion of the right elbow without laxity. The assessment was right elbow contusion/sprain. Another record with an illegible date indicated that there was tenderness over the lateral epicondyle with full range of motion. X-rays were within normal limits. The assessment was right elbow sprain. There were no follow-up records of treatment during service.

Post service, the claims file does not indicate that the Veteran has any complaints, treatment, or diagnoses related to her right elbow.

Accordingly, the Board finds that the preponderance of the evidence is against the claim and entitlement to service connection for a right elbow disability is not warranted. 38 U.S.C. § 5107(b) (2012); Gilbert, 1 Vet. App. At 49. 

4. Right Hip, Thigh, and Leg Disabilities

The Veteran’s service treatment records indicated that she complained of right thigh pain in August 1998. She stated that she began noticing it one month previously after she had increased her activity. On examination, there was no palpable tenderness, and no tenderness in the hip or knee. X-rays of the right femur were negative. She was given Naprosyn and referred for physical therapy. In September 1998, she reported that her right thigh pain was getting better. She stated that she was taking Naprosyn and doing her physical therapy exercises and that it was not bothering her as it did. There were no follow-up records of treatment for the right thigh during service. Her service treatment records are otherwise unremarkable for any complaints, treatment, or diagnoses related to the right hip and leg.

Post service, a December 2007 VA treatment record indicated that the Veteran reported experiencing intermittent pain in her lower abdomen and right upper thigh. An ultrasound of the pelvis was conducted to rule out an ovarian cyst; those results were normal. A venous doppler of the right lower extremity showed no evidence of femoral-popliteal deep vein thrombosis. In March 2009, it was noted that she had recurrent left pelvic/hip pain. The physician noted that she also had back pain and that it was probably musculoskeletal. X-rays of pelvis and left hip showed no abnormalities. 

An August 2012 VA outpatient treatment record indicated that the Veteran reported experiencing right hip pain for a few days. She stated that she had had it before intermittently. She also reported right lower back pain with radiation down the right leg. There was tenderness to palpation of the iliolumbar and gluteal areas. The impression was sciatica. 

During a September 2016 VA examination for the back, the Veteran reported that she began experiencing radicular symptoms in 2001. She indicated that she had mild intermittent pain, paresthesias and/or dysesthesias, and numbness in both lower extremities. The VA examiner opined that she had bilateral symptoms of radiculopathy that were likely related to her underlying chronic back condition. He noted that a November 2015 CT of the pelvis suggested a L4-L5 protrusion, which could correlate to her radicular symptoms. 

A November 2016 VA treatment record indicated that the Veteran reported experiencing chronic right leg pain for 10+ years. X-rays of the right lower extremity were normal. A venous doppler of the right lower extremity was normal with no evidence of femoral-popliteal deep vein thrombosis. In February 2017, she complained of right foot and leg pain. In April 2017, electrodiagnostic testing showed no evidence to support right lumbar radiculopathy. 

During a July 2017 VA examination for the back, the Veteran reported experiencing intermittent sciatic symptoms in both legs. The examiner indicated that she had mild radiculopathy in both lower extremities involving L4/L5/S1/S2/S3 nerve roots of the sciatic nerve. 

A November 2017 VA treatment record indicated that the Veteran reported experiencing an exacerbation of leg pain. It was noted that she had a history of degenerative disease of the lumbar spine, chronic sacroiliac joint pain, sciatica, and pain in the right knee and ankle. It was noted that a May 2017 CT of the abdomen and pelvis showed moderate degenerative changes at L2-L3. November 2017 X-rays of the lumbar spine showed mild dextroscoliosis and mild to moderate multilevel degenerative changes in the lumbar spine. The diagnostic impression was chronic low back and referred right leg pain and pain at the sacroiliac joint. 

In this case, although April 2017 electrodiagnostic testing did not show evidence of right lumbar radiculopathy, the weight of the evidence indicates that the Veteran’s right hip, thigh, and leg symptoms are related to lumbar radiculopathy. She is service connected for radiculopathy of the right lower extremity. The evidence does not indicate that she has a separate disability of the right hip, thigh, or leg. 

The Board has also considered the lay evidence of record. The Veteran is competent to describe what she has personally observed or experienced; however, the ultimate questions of diagnosis and etiology in this case extend beyond an immediately observable cause-and-effect relationship and are beyond the competence of lay witnesses. 

Accordingly, the Board finds that the preponderance of the evidence is against the claims and entitlement to service connection for right hip, thigh and leg disabilities is not warranted. 38 U.S.C. § 5107(b) (2012); Gilbert, 1 Vet. App. At 49. 

Increased Rating Claims

1. Entitlement to a disability rating in excess of 10 percent for abdominal adhesions from February 28, 2017, to August 24, 2018

The issue of an increased rating for abdominal adhesions arose from the Veteran’s claim that was filed on February 28, 2017. In the August 2018 RAMP decision currently on appeal, the AOJ continued a 10 percent rating for abdominal adhesions. The Veteran appealed and is seeking a higher rating.

A March 2017 VA treatment record indicated that the Veteran had symptomatic cystocele and overactive bladder. She reported that her urgency had become more bothersome and that she seldomly had urge incontinence. It was noted that she had nocturia two to three times per night. The physician discussed a trial of Mirabegron and pelvic floor physical therapy. 

A June 2017 VA examination report indicated that a May 2017 CT scan of the Veteran’s abdomen and pelvis showed a surgically absent uterus and normal bilateral ovaries. The Veteran’s main concern was a cystocele that was causing pelvic pressure. It was noted that she was undergoing pelvic floor physical therapy. The Veteran reported experiencing mild, intermittent pain and pelvic pressure secondary to cystocele with mild stress urinary incontinence only requiring occasional panty liner usage. It was noted that Mirabegron controlled urge incontinence and urinary frequency symptoms. The examiner noted that symptoms of right pelvic pain were not controlled by continuous treatment. It was also noted that stress urinary incontinence required absorbent material that was changed less than two times per day. The VA examiner opined that the Veteran’s abdominal adhesions had become more severe. 

In this case, the Board finds that a 30 percent rating for the Veterans’ service-connected adhesions is warranted based on the June 2017 VA examiner’s finding that symptoms were not controlled by continuous treatment. See 38 C.F.R. § 4.116, Diagnostic Code 7615. The Board notes that a higher schedular rating is not available under Diagnostic Code 7615. 

The Board has also considered whether a higher rating is warranted under the criteria used to evaluate voiding dysfunction and urinary frequency under 38 C.F.R. § 4.115a. The evidence, however, does not show that the Veteran requires the wearing of absorbent materials which must be changed two to four times a day; daytime voiding interval less than one hour; or awakening to void five or more times per night. See 38 C.F.R. § 4.115a. Therefore, those criteria do not entitle the Veteran to a rating higher than the 30 percent rating under Diagnostic Code 7615. See 38 C.F.R. §§ 4.115a, 4.116.

Overall, based on the totality of the evidence, the Board finds that the Veteran’s disability picture more closely approximates the criteria for a 30 percent rating.

2. Entitlement to disability ratings in excess of 10 percent for right and left carpal tunnel syndrome from February 28, 2017, to August 24, 2018 

The issues of increased ratings for right and left carpal tunnel syndrome arose from the Veteran’s claim that was filed on February 28, 2017. In the August 2018 RAMP decision currently on appeal, the AOJ continued 10 percent ratings for right and left carpal tunnel syndrome. The Veteran appealed and is seeking higher ratings.

During a June 2017 VA examination, the Veteran reported that she experienced pain in both hands and that the pain had been progressive since 2004. She stated that she experienced moderate intermittent pain, mild paresthesias and/or dysesthesias, and mild numbness. She stated that she used carpal tunnel braces each night. Muscle strength testing in the upper extremities was normal. Reflexes were normal. There was no muscle atrophy and no trophic changes. Phalen’s and Tinel’s signs were negative. On examination, the median nerves were normal. The examiner noted that prior electromyography studies had shown sensory deficits in the distal median nerves. 

VA treatment records note a history of carpal tunnel syndrome, but do not show any ongoing treatment during the appeal period.

Based on the foregoing, the Board finds that the Veteran’s disability picture more closely approximates the criteria for a 10 percent rating under 38 C.F.R. § 4.124a, Diagnostic Code 8515. Although the Veteran reported experiencing moderate intermittent pain, the median nerves were normal on examination with no evidence of decreased strength or reflexes. Furthermore, Phalen’s and Tinel’s signs were negative and there was no muscle atrophy or trophic changes. Therefore, the Board finds that the overall functional impairment resulting from the Veteran’s service-connected carpal tunnel syndrome is no more than mild in severity.

Overall, based on the totality of the evidence, the Board finds that the Veteran’s disability picture more closely approximates the criteria for a 10 percent rating. Accordingly, the Board finds that the preponderance of the evidence is against the claims and entitlement to increased ratings for right and left carpal tunnel syndrome is not warranted. 38 U.S.C. § 5107(b) (2012); Gilbert, 1 Vet. App. At 49. 

3. Entitlement to disability ratings in excess of 10 percent for radiculopathy of the right and left lower extremities from February 28, 2017, to August 24, 2018 

The issues of increased ratings for radiculopathy of the right and left lower extremities arose from the Veteran’s claim that was filed on February 28, 2017. In the August 2018 RAMP decision currently on appeal, the AOJ continued 10 percent ratings for radiculopathy of the lower extremities. The Veteran appealed and is seeking higher ratings.

A February 2017 VA treatment record indicated that the Veteran’ reported experiencing greater pain in her right leg and foot in the prior six months. Straight leg raise testing was negative; muscle power in the lower extremities was symmetric. Her gait was within normal limits. An April 2017 VA electromyography of the lower extremities was normal with no evidence to support right lumbar radiculopathy.

During a July 2017 VA examination, the Veteran reported experiencing moderate intermittent pain and moderate paresthesias and/or dysesthesias in her lower extremities. Muscle strength testing was normal. Reflexes were hypoactive at the knees and ankles. There was decreased sensation to light touch of the thighs, knees, lower legs, ankles, feet, and toes. There was normal sensation of the upper anterior thighs. There was no muscle atrophy, and straight leg raise testing was negative. The examiner indicated that the Veteran had radiculopathy that involved the L4/L5/S1/S2/S3 nerve roots of the sciatic nerve and that it was mild in severity. 

August 2017, November 2017, December 2017, and February 2018 VA treatment records indicated that the Veteran’s gait was normal. In August 2017, straight leg raise testing was negative. 

Based on the foregoing, the Board finds that the Veteran’s disability picture more closely approximates the criteria for a 10 percent rating under 38 C.F.R. § 4.124a, Diagnostic Code 8520. Although the Veteran reported experiencing moderate intermittent pain and paresthesias and/or dysesthesias, straight leg raising was negative, her gait was normal, the April 2017 electromyography was normal, and the July 2017 VA examiner opined that her radiculopathy was mild in severity. Therefore, the Board finds that the overall functional impairment resulting from the Veteran’s service-connected radiculopathy of the lower extremities is no more than mild in severity.

Overall, based on the totality of the evidence, the Board finds that the Veteran’s disability picture more closely approximates the criteria for 10 percent ratings. Accordingly, the Board finds that the preponderance of the evidence is against the claims and entitlement to increased ratings for radiculopathy of the right and left lower extremities is not warranted. 38 U.S.C. § 5107(b) (2012); Gilbert, 1 Vet. App. At 49. 

4. Entitlement to a compensable disability rating for allergic rhinitis from February 28, 2017, to August 24, 2018

The issue of an increased rating for allergic rhinitis arose from the Veteran’s claim that was filed on February 28, 2017. In the August 2018 RAMP decision currently on appeal, the AOJ continued a noncompensable rating for allergic rhinitis. The Veteran appealed and is seeking a compensable rating.

During a July 2017 VA examination, the Veteran reported experiencing chronic allergic rhinitis with nasal stuffiness and postnasal drainage. She stated that she had one infection in the past year that required antibiotics. She also indicated that she had occasional nose bleeds if her nasal airways became too dry. She reported that she took Allegra and used saline nasal spray daily. On examination, the examiner indicated that the Veteran’s allergic rhinitis did not result in greater than 50 percent obstruction of the nasal passage on both sides, complete obstruction on either side, or nasal polyps. There was permanent hypertrophy of the nasal turbinates. Sinuses were nontender. There was evidence of postnasal drainage.

VA outpatient treatment records during the appeal period note seasonal rhinitis.

Based on the foregoing, the Board finds that the Veteran’s disability picture more closely approximates the criteria for a noncompensable percent rating under 38 C.F.R. § 4.97, Diagnostic Code 6522. The evidence does not indicate that the Veteran’s allergic rhinitis has resulted in nasal polyps, 50 percent obstruction of nasal passages on both sides, or complete obstruction on one side. 38 C.F.R. § 4.97, Diagnostic Code 6522. 

Accordingly, the Board finds that the preponderance of the evidence is against the claim and entitlement to a compensable rating for allergic rhinitis is not warranted. 38 U.S.C. § 5107(b) (2012); Gilbert, 1 Vet. App. At 49. 

Effective Date/CUE Claims

1. Entitlement to an effective date prior to August 16, 2016, for the grant of service connection for lumbosacral strain on the basis of CUE

In this case, the Veteran was discharged from service on June 30, 2001. 

On April 9, 2003, the Veteran filed a claim for service connection for back pain. In a July 2003 rating decision, the AOJ denied the claim. She filed a notice of disagreement (NOD) and a statement of the case (SOC) was issued in October 2004; however, she did not perfect her appeal. Therefore, the July 2003 rating decision is final. 

On August 16, 2016, the Veteran filed an application to reopen the claim of service connection for a low back disability. In an October 2016 rating decision, the AOJ granted service connection for lumbosacral strain effective August 16, 2016. 

In February 2017, the Veteran filed a claim seeking an earlier effective date for the grant of service connection for lumbosacral strain on the basis of CUE. She argues that the AOJ committed CUE when it denied her claim in the July 2003 rating decision, and that an effective date of April 9, 2003, should be assigned. 

In order to find CUE in a prior adjudication, the following three-prong test must be met: (1) either the correct facts, as they were known at the time, were not before the adjudicator (i.e., there must be more than a simple disagreement as to how the facts were weighed or evaluated) or the statutory or regulatory provisions extant at the time were incorrectly applied; (2) the error must be undebatable and of the sort which, had it not been made, would manifestly have changed the outcome at the time it was made; and (3) a determination that there was clear and unmistakable error must be based upon the record and law that existed at the time of the prior adjudication in question. Damrel v. Brown, 6 Vet. App. 242 (1992); Russell v. Principi, 3 Vet. App. 310 (1992).

Clear and unmistakable error is a very specific and rare kind of error. It is the kind of error, of fact or law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error. Thus, even where the premise of error is accepted, if it is not absolutely clear that a different result would have ensued, the error complained of cannot be, ipso facto, clear and unmistakable. Fugo v. Brown, 6 Vet. App. 40 (1993).

In this case, the AOJ initially denied the Veteran’s claim for service connection for back pain in a July 2003 rating decision, noting that although there were records of treatment for back pain in service, there was no permanent residual or chronic disability shown by the service medical records or demonstrated by evidence following service. The AOJ also noted that pain alone was not in and of itself a disability. 

In rendering the July 2003 rating decision, the AOJ indicated that it had reviewed the Veteran’s service treatment records dated from January 1997 to June 2001, as well as VA examination reports dated in May 2003. 

The Veteran’s service treatment records indicated that she complained of low back pain on numerous occasions, including in December 1998, May 1999, October 1999, and April 2000. In October 1999, the assessment was acute lumbar spasms. In April 2000, it was noted that she had chronic low back spasms and was given a refill for Flexeril. A May 2000 X-ray of the lumbar spine was normal without evidence of spondylolysis or spondylolisthesis.

The report of a May 2003 VA examination indicated that the Veteran provided a history of low back problems for the past two years. She reported taking Aleve almost every day for pack pain. On examination, flexion was limited to 85 degrees with pain; however, she could flex forward to 90 degrees. Range of motion of the lumbar spine was otherwise normal. Straight leg raise testing was negative. X-rays showed “mild degree of spondylotic changes of the spine … with normal lordosis.” The examiner’s diagnosis was “Chronic low back pain. Mild functional loss due to pain.” 

In reviewing the July 2003 rating decision, the Board finds that the decision denied the existence of evidence in the file that existed at the time, including the April 2000 service treatment record that characterized the Veteran’s muscle spasms as “chronic”; the Veteran’s lay statements reporting ongoing back problems since service; the May 2003 X-ray showing spondylotic changes of the lumbar spine; and the May 2003 VA examiner’s finding of mild functional impairment. Significantly, there was nothing in the claims file that indicated that the Veteran’s low back condition had resolved as indicated by the July 2003 rating decision. 

Based on the foregoing, the Board finds that the July 2003 rating decision denied the existence of evidence in the file that that existed at the time. Therefore, two of the three prongs of CUE have been met. See Bouton v. Peake, 23 Vet. App. 70 (2008). The Board finds that this is not a case in which there is a disagreement as to how the facts were weighed or evaluated. Rather, the AOJ affirmatively stated in its July 2003 decision that the above-cited evidence did not exist, even though it demonstrated key elements of the denial - that of an in-service chronic disability and a current disability. 

Lastly, as for the third prong of CUE, the Board finds that the error in the July 2003 rating decision was outcome determinative because the decision would have resulted in a different outcome if the favorable evidence had been properly considered. See Fugo, 6 Vet. App. 43-44. The service treatment records demonstrated chronic low back pain and muscle spasms; the Veteran’s lay statements indicated chronicity of symptomatology; and the May 2003 VA examination report indicated that there was a current disability. The claim was specifically denied based on the lack of chronicity and the absence of a current disability. Therefore, the showing of the in-service chronicity and a current disability would have manifestly changed the outcome of the case. Thus, the elements of CUE have been met.

With CUE in the July 2003 rating decision established, the remaining issue is the proper effective date to be assigned for the award of service connection for lumbosacral strain. As the July 2003 rating decision contained clear and unmistakable error, the effective date of the award for benefits is the date from which benefits would have been payable if the corrected decision had been made on the date of the reversed decision. See 38 C.F.R. § 3.400(k). In this case, the first formal or informal claim for service connection for a low back disability was received by the AOJ on April 9, 2003, more than one year after the Veteran was discharged from service. The Veteran does not contend nor does the evidence show that she filed a claim for service connection prior to that date. Therefore, the effective for the grant of service connection for a lumbosacral strain must be April 9, 2003. 

2. Entitlement to an effective date prior to August 16, 2016, for the grant of service connection for right and left carpal tunnel syndrome 

In this case, the Veteran was discharged from service on June 30, 2001. 

On April 9, 2003, the Veteran filed a claim for service connection for bilateral carpal tunnel syndrome. In a July 2003 rating decision, the AOJ denied the claim. She filed a NOD and a SOC was issued in October 2004; however, she did not perfect her appeal. Therefore, the July 2003 rating decision is final. 

On August 16, 2016, the Veteran filed an application to reopen the claim of service connection for bilateral carpal tunnel syndrome. In an October 2016 rating decision, the AOJ granted service connection for bilateral carpal tunnel syndrome effective August 16, 2016. 

In February 2017, the Veteran filed a claim seeking an earlier effective date for the grant of service connection for bilateral carpal tunnel syndrome. She argues that AOJ committed CUE when it denied her claim in the July 2003 rating decision, and that an effective date of April 9, 2003, should be assigned. 

In the July 2003 rating decision, the AOJ denied the Veteran’s claim for service connection for carpal tunnel syndrome, noting that the episodes of carpal tunnel syndrome during service were acute and transitory, and that there were no permanent residuals or chronic disability shown by the service medical records or demonstrated by evidence following service. The AOJ also noted that although the VA examination noted tingling and numbness of the hands, there was no evidence linking those symptoms to service. 

In rendering the July 2003 rating decision, the AOJ indicated that it had reviewed the Veteran’s service treatment records dated from January 1997 to June 2001, as well as VA examination reports dated in May 2003. 

The Veteran’s service treatment records indicated that she complained of tingling in her left arm in July 1997. Tinel’s sign was positive. The assessment was carpal tunnel syndrome. She was instructed to take NSAIDs, elevate her wrist, and use a volar wrist splint. In April 1999, she complained of intermittent left arm numbness in a stocking, glove pattern. In May 1999, electromyography and nerve conduction studies showed no evidence of compression neuropathy or polyneuropathy as tested in the right and left upper extremities. It was noted clinical correlation was required. Another record with an illegible date notes that the Veteran had intermittent aching in her left forearm for the past two years that occurred about twice a week. It was noted that her symptoms were clinically complex and not suggestive of carpal tunnel syndrome. 

The report of a May 2003 VA examination indicated that the Veteran complained of a three-year history of bilateral hand numbness and tingling. She also reported experiencing pain in her wrists. Examination of the wrists/hands revealed no tenderness or deformities. There was full range of motion of the wrists. Tinel’s sign was positive on the right. It was noted that electromyography and nerve conduction studies were ordered at another VA facility, but the Veteran was unable to attend because she worked out of town. The diagnoses included (1) “Numbness and tingling bilateral hands with previous neurological and nerve conduction studies not diagnostic of carpal tunnel syndrome. Tinel’s sign on the right side is positive” and (2) “Carpal Tunnel syndrome of hands bilaterally.”

In reviewing the July 2003 rating decision, the Board finds that the decision denied the existence of evidence in the file that existed at the time, namely the May 2003 VA examination that noted a diagnosis of bilateral carpal tunnel syndrome. Although the VA examiner noted that prior electrodiagnostic testing was not diagnostic of carpal tunnel syndrome, he noted that Tinel’s sign was positive of the right side and ultimately reported a diagnosis of bilateral carpal tunnel syndrome. 

Based on the foregoing, the Board finds that the July 2003 rating decision denied the existence of evidence in the file that that existed at the time. Therefore, two of the three prongs of CUE have been met. See Bouton, 23 Vet. App. at 70. The Board finds that this is not a case in which there is a disagreement as to how the facts were weighed or evaluated. Rather, the AOJ affirmatively stated in its July 2003 decision that the above-cited evidence did not exist, even though it demonstrated a key element of the denial - that of a current disability. 

Lastly, as for the third prong of CUE, the Board finds that the error in the July 2003 rating decision was outcome determinative because the decision would have resulted in a different outcome if the favorable evidence had been properly considered. See Fugo, 6 Vet. App. 43-44. The initial impression during service was that the Veteran had carpal tunnel syndrome; however, electrodiagnostic testing did not confirm the diagnosis and a neurologist did not believe that the Veterans’ symptoms were suggestive of carpal tunnel syndrome. However, the Veteran’s lay statements indicated that she continued to experience numbness, tingling, and pain in her forearms and wrists, and the May 2003 VA examiner indicated that Tinel’s sign was positive and that she had bilateral carpal tunnel syndrome. The claim was specifically denied based on the lack of chronicity and the absence of a current disability. Therefore, the showing of in-service chronicity and a current disability would have manifestly changed the outcome of the case. Thus, the elements of CUE have been met.

With CUE in the July 2003 rating decision established, the remaining issue is the proper effective date to be assigned for the award of service connection for bilateral carpal tunnel syndrome. As the July 2003 rating decision contained clear and unmistakable error, the effective date of the award for benefits is the date from which benefits would have been payable if the corrected decision had been made on the date of the reversed decision. See 38 C.F.R. § 3.400(k). In this case, the first formal or informal claim for service connection for bilateral carpal tunnel syndrome was received by the AOJ on April 9, 2003, more than one year after the Veteran was discharged from service. The Veteran does not contend nor does the evidence show that she filed a claim for service connection prior to that date. Therefore, the effective for the grant of service connection for bilateral carpal tunnel syndrome must be April 9, 2003. 

3. Whether there was CUE in a July 2003 rating decision that denied service connection for anxiety and depression 

On April 9, 2003, the Veteran filed a claim for service connection for anxiety and depression. In a July 2003 rating decision, the AOJ denied the claim. She filed a NOD and a SOC was issued in October 2004; however, she did not perfect her appeal. Therefore, the July 2003 rating decision is final. 

In February 2017, the Veteran filed a claim in which she argued that the previous denial of service connection for anxiety and depression was CUE. She contends that the condition was clearly diagnosed but overlooked by the AOJ. 

In the July 2003 rating decision, the AOJ denied the Veteran’s claim for service connection for anxiety and depression, noting that the service treatment records showed a diagnosis of adjustment disorder with mixed anxiety and depressed mood, but that the evidence did not show any further treatment or care. The AOJ also noted that there were no records of a current disability related to service. 

In rendering the July 2003 rating decision, the AOJ indicated that it had reviewed the Veteran’s service treatment records dated from January 1997 to June 2001, as well as VA examination reports dated in May 2003. 

A November 2000 service treatment record indicated that the Veteran’s mood was dysphoric and her affect was congruent with the content of her speech. She was tearful at times and denied any suicidal or homicidal ideation. The assessment was adjustment disorder with mixed anxiety and depression. During the interview, she indicated that she wanted to seek care from a civilian provider, as she was a nurse at that facility. She was referred to a civilian provider and informed that LSC services were available if her condition became more severe. At her June 2001 separation interview, it was noted that she was counseled for emotional distress earlier that year. 

In April 2003, the Veteran filed a claim for service connection for anxiety and depression. She also submitted an authorization form so that VA could obtain private treatment records for anxiety and depression from Meadhaven Outpatient Clinic dated from 1999 to 2001. Later that month, VA sent the Veteran a letter notifying her that the privacy laws had changed and that the authorization form that she submitted was invalid. VA requested that she submit new forms or obtain and submit the evidence herself. She did not respond to that letter.

The report of a May 2003 VA examination indicated that the Veteran complained of experiencing difficulty sleeping, anger, and resentment related to an Article 15 that she believed was unfairly put on her record. She indicated that she entered counseling to try to stop the Article 15 charges. She stated that she sought counseling one- or two-times off base, but that she stopped needing counseling several months before she was discharged in June 2001. The examiner noted that the Veteran’s reports of emotional distress were that of brief crying spells that occurred once a month and interrupted sleep. The examiner opined that the symptoms were not clinically significant nor were they likely to interfere with daily functioning. The examiner indicated that the Veteran had no psychiatric diagnosis. 

In this case, the Board does not find CUE in the July 2003 rating decision. Disagreement as to how the facts were weighed or evaluated does not rise to the level of CUE. See Fugo, 6 Vet. App. at 43-44 (1993). Here, the evidence does not show that the Veteran’s emotional distress that was diagnosed as adjustment disorder with mixed anxiety and depression during service was chronic in nature. The evidence also does not show that she had a psychiatric disability when she filed her claim for service connection in April 2003. Therefore, the Board does not find that the AOJ erroneously denied evidence that existed at that time, i.e., that the correct facts, as they were known at the time, were not before the adjudicator. The Board also does not find that the statutory or regulatory provisions extant at the time were incorrectly applied.

The Board has reviewed the claims file and does not find any evidence of CUE in the July 2003 rating decision that denied service connection for anxiety and depression. Therefore, the claim is denied.

REASONS FOR REMAND

1. Service Connection – Eczema of the Hands 

A January 1998 service treatment record indicated that the Veteran had mild eczema of the hands. A February 2012 VA outpatient treatment record indicated that she had a rash on her hands, which was diagnosed as dermatitis. 

The AOJ did not obtain a VA examination prior to the August 2018 rating decision on appeal. However, based on the foregoing, the Board finds that a VA examination/medical opinion is required to determine whether the Veteran has a current skin disability that was incurred in or is otherwise related to her military service. 

2. Service connection – Gastrointestinal Disability 

A September 1999 service treatment record indicated that the Veteran was diagnosed with gastroenteritis. In October 1999, it was noted that she tested positive for H. pylori and the assessment was GERD versus peptic ulcer disease. A November 2005 VA outpatient treatment record indicated that the Veteran had a diagnosis of GERD and was taking Zantac. In January 2010, it was also noted that she had a Schatzki ring. 

The AOJ did not obtain a VA examination prior to the August 2018 rating decision on appeal. However, based on the foregoing, the Board finds that a VA examination/medical opinion is required to determine whether the Veteran has a current gastrointestinal disability incurred in or is otherwise related to her military service. 

3. Service Connection – Sinusitis 

A February 1997 service treatment record indicated that the Veteran was assessed as having bronchitis/sinusitis. In December 2016, a VA examiner indicated that chronic sinusitis was not found; however, VA treatment records noted treatment for sinusitis in February 2018 and March 2018. 

The AOJ did not obtain an additional VA examination prior to the August 2018 rating decision on appeal. However, based on the foregoing, the Board finds that an additional VA examination/medical opinion is required to determine whether the Veteran has chronic sinusitis that was incurred in or is otherwise related to her military service. 

4. Service Connection – Sleep Apnea

An April 1999 service treatment record indicated that the Veteran reported experiencing excessive snoring for three or four months. She denied experiencing insomnia or daytime sleepiness. VA treatment records indicated that she was diagnosed with sleep apnea after complaints of snoring in 2010. 

The AOJ did not obtain a VA examination prior to the August 2018 rating decision on appeal. However, based on the foregoing, the Board finds that a VA examination/medical opinion is required to determine whether the Veteran’s sleep apnea was incurred in or is otherwise related to her military service. 

5. Increased Rating – Supraventricular Tachycardia

A VA examination for the Veteran’s service-connected supraventricular tachycardia was conducted in July 2017. The report indicated that the Veteran had subjective episodes of tachycardia four or more times per year. The Board notes that to warrant a compensable rating, the evidence must show supraventricular tachycardia documented by electrocardiogram (ECG) or Holter monitor; however, no ECG or Holter monitor testing was done during examination. 38 C.F.R. § 4.104, Diagnostic Code 7010. The most recent ECG was conducted in 2016, prior to the Veteran’s claim for an increased rating. 

Based on the foregoing, the Board finds that the July 2017 VA examination was inadequate, and that an additional VA examination is required to determine the current severity of the Veteran’s service-connected supraventricular tachycardia. 

6. Earlier Effective Date/CUE Claim – Radiculopathy of the Lower Extremities

In the decision above, the Board granted an effective date of April 9, 2003, for the Veteran’s lumbar spine disability. In light of that decision, the disability rating assigned for the lumbar spine disability from April 9, 2003, to August 15, 2016, should be initially adjudicated by the AOJ to avoid any prejudice to the Veteran. Bernard v. Brown, 4 Vet. App. 384 (1993).

Regarding the effective date for the Veteran’s radiculopathy of the lower extremities, the Board finds that the issue is inextricably intertwined with the disability rating assigned for the Veteran’s service-connected lumbar spine disability. Harris v. Derwinski, 1 Vet. App. 180 (1991). The Board notes that any objective neurologic abnormalities associated with the lumbar spine disability are to be rated separately under the appropriate diagnostic code. See 38 C.F.R. § 4.71a, Diagnostic Code 5237, Note (1) (effective September 26, 2003). Therefore, a determination on the claim for an earlier effective date for radiculopathy should be deferred pending the AOJ’s adjudication of the disability rating for the Veteran’s lumbar spine disability. 

The matters are REMANDED for the following action:

1. Schedule the Veteran for a VA examination by an examiner with appropriate expertise to determine the nature and etiology of any skin disability of the hands that may be present. The claims file must be made available to, and reviewed by the examiner. Any indicated studies should be performed. 

Based on the examination results and a review of the record, the examiner should provide an opinion as to whether it is at least as likely as not (50 percent probability or better) that any currently present skin disability of the hands was incurred in or is etiologically related to the Veteran’s active service. 

A rationale for all opinions expressed must be provided.

2. Schedule the Veteran for a VA examination by an examiner with appropriate expertise to determine the nature and etiology of any gastrointestinal disability that may be present. The claims file must be made available to, and reviewed by the examiner. Any indicated studies should be performed. 

Based on the examination results and a review of the record, the examiner should provide an opinion as to whether it is at least as likely as not (50 percent probability or better) that any currently present gastrointestinal disability was incurred in or is etiologically related to the Veteran’s active service. 

A rationale for all opinions expressed must be provided.

3. Schedule the Veteran for a VA examination by an examiner with appropriate expertise to determine the nature and etiology of any sinusitis that may be present. The claims file must be made available to, and reviewed by the examiner. Any indicated studies should be performed. 

Based on the examination results and a review of the record, the examiner should provide an opinion as to whether it is at least as likely as not (50 percent probability or better) that any currently present sinusitis was incurred in or is etiologically related to the Veteran’s active service. 

The examiner should also provide an opinion as to whether it is at least as likely as not (50 percent probability or better) that any currently present sinusitis was caused or chronically worsened by the Veteran’s service-connected allergic rhinitis. 

A rationale for all opinions expressed must be provided.

4. Schedule the Veteran for a VA examination by an examiner with appropriate expertise to determine the nature and etiology of any sleep apnea that may be present. The claims file must be made available to, and reviewed by the examiner. Any indicated studies should be performed. 

Based on the examination results and a review of the record, the examiner should provide an opinion as to whether it is at least as likely as not (50 percent probability or better) that any currently present sleep apnea was incurred in or is etiologically related to the Veteran’s active service. 

A rationale for all opinions expressed must be provided.

5. Schedule the Veteran for an appropriate VA examination to determine the current level of severity of all impairment resulting from her service-connected supraventricular tachycardia. All indicated tests should be performed and all findings should be reported in detail, to include ECG and/or Holter monitoring. 

 

Kristin Haddock

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD S. Mishalanie, Counsel